Exhibit A

## AMENDED AND RESTATED
## MERCHANDISE LICENSE AGREEMENT

THIS AMENDED AND RESTATED MERCHANDISE LICENSE AGREEMENT ("**Agreement**") is made as of October 7, 2010 (the "**Execution Date**") and shall be deemed effective as of September 14, 2006 (the "**Effective Date**") by and between ZUFFA, LLC ("**Licensor**"), 2960 West Sahara Avenue, Las Vegas, Nevada 89102, and THQ INC. ("**Licensee**"), 29903 Agoura Road, Agoura Hills, CA 91301.

## WITNESSETH

WHEREAS, Licensor owns or controls the rights in and to the Property (as defined below) and;

WHEREAS, Licensee is engaged in the business of developing, manufacturing, distributing, selling and otherwise exploiting computer software products, and desires to develop, manufacture, distribute, sell, and otherwise exploit Licensed Products (as defined below) embodying the Property in accordance with and subject to all of the provisions of this Agreement;

WHEREAS, the parties entered into and have been operating under a Deal Memo Agreement dated September 11, 2006 (the "**Deal Memo**") granting Licensee the right to develop, manufacture, distribute, sell, and otherwise exploit Licensed Products (as defined below) embodying the Property;

WHEREAS, the parties entered into and have operating under a Merchandise License Agreement dated effective as of September 11, 2006, as amended by Amendments dated as of February 12, 2010 and as of April 2, 2010, respectively (the "**Original Agreement**"); and

WHEREAS, the parties desire to further amend the Original Agreement and, upon mutual execution hereof, this Amended and Restated Merchandise Agreement will amend and supersede the Deal Memo and Original Agreement;

NOW, THEREFORE, the parties do hereby agree as follows:

1.  **PROPERTY**: The term "**Property**" means:

    (a)  Subject to Licensor's approvals, all past and present names, logos, symbols, emblems, copyrights, trademarks and indicia, including associated rules, associated with the "Ultimate Fighting Championship" (for convenience, "**UFC**"), "PRIDE Fighting Championship" and "PRIDE FC" (for convenience, "**PRIDE**").

    (b)  Subject to Licensor's approvals, and any contractual restrictions of which Licensor notifies Licensee in writing, the names, likenesses, voices, signature, statistics, personas, biographical information and other identifiable features, marks and characteristics associated with specified fighters currently competing in the UFC and/or PRIDE ("**Current Fighters**"), past fighters whose rights Licensor may control for purposes of this Agreement ("**Past Fighters**"), and any non-mixed martial arts celebrity personality ("**Celebrity Fighter**") whose rights Licensor may control for purposes of this Agreement. Hereinafter, Current Fighters, Past Fighters and Celebrity Fighters are collectively referred to as "**Fighters**." Licensor shall use reasonable efforts to secure the requisite rights of the Past Fighter and Celebrity Fighters as possible. The Fighters for *UFC Undisputed 2009* and *UFC Undisputed 2010* are listed in Schedules "B" and "B-1", respectively, attached hereto and incorporated herein by reference, it being understood that the use by Licensee of the names, likenesses, and other identifiable features, marks and characteristics associated with the persons listed in Schedule "B-1" under the headings of "Celebrity Fighters" and "Employees" is limited to use in *"UFC: Undisputed 2010"* only. The parties further understand that, in addition to the foregoing, such schedule may be amended from time to time to include fighters joining or departing the UFC and/or PRIDE during the Term; for purposes of this Agreement, at an appropriate

{00020682.DOC/4 / 08/31/2010 04:18 PM}Zuffa LLC - UFC Amended and Restated Merchandise License Agreement 10 07 10F.docx
CONFIDENTIAL

1

time during development of a new game embodying the Property, the parties will meet and agree on an updated list of Fighters who may appear in such new game. Licensor acknowledges that, due to limitations on software development, Licensee may not be able to remove a Fighter designated by Licensor for removal from a Software Product without materially impacting the functionality of the code and in such instance, any removal or addition to Fighters who may appear in a Software Product may be accommodated by Licensee on a prospective basis. Licensor shall provide Licensee with redacted copies or summaries of any applicable agreements with Fighters which may limit Licensee's rights to use any such Fighters.

(c)  To the extent the relevant rights are owned or controlled by Licensor, the name, logo, symbol, emblem, trademark, indicia, mark, layout, design, visual representation and any other identifiable marks and characteristics associated with the past and present UFC and PRIDE events, including the Octagon fighting stage and the PRIDE Cage. Layouts of the arenas shall be provided to Licensee in their original aspects and shall include all signs, billboards, and banners that may appear for reference purposes only, it being understood that no grant of rights accompanies the provision of such reference material to Licensee.

(d)  To the extent the relevant rights are owned or controlled by Licensor, (i) fight images (video footage and/or film and stills), of all events included in the UFC and/or PRIDE, including all Fighters, provided that the images feature only approved Fighters; and (ii) the names and likeness of employees of Licensor, provided that the employees selected by Licensee are approved by Licensor for each game on a game-by-game basis; and

(e)  Subject to any third party contractual restrictions and the payment by THQ of any mechanical license fees, all music owned or controlled by Licensor. To the extent that Licensor does not control such rights, Licensor shall use reasonable efforts to assist Licensee in securing such rights.

For the avoidance of doubt, the term "**Property**" expressly excludes all past and present names, logos, symbols, emblems, copyrights, trademarks and indicia associated with any other mixed martial arts events and competitions owned, controlled, organized or sponsored by Licensor, such as, but not limited to, "Bushido," "World Extreme Cagefighting" ("**WEC**"), "World Fighting Alliance" ("**WFA**"), as well as the names, likenesses, images, voices, signature, statistics, personas, biographical information and other identifiable features, marks and characteristics associated with fighters (past and present) competing in the Bushido, WEC and WFA events and competitions, provided, however, if any of the Bushido, WEC or WFA fighters also fight in the UFC during the course of development of a Software Product or fought in PRIDE, then Licensee shall be entitled to select such fighters for the respective Software Product Fighter roster, but Licensee expressly acknowledges that it shall not, without Licensor's prior written consent in each instance (which consent may be withheld by Licensor in its sole discretion) refer to such fighter's competition in the Bushido, WEC and WFA or otherwise mention or refer to the Bushido, WEC and WFA.

2.  **LICENSED PRODUCT(S)**: The term "**Licensed Products**" means:

(a)  Interactive game software products, in all languages ("**Software Products**") developed by Licensee to operate on all computer and video game hardware platforms which platforms are or become commercially available during the Term ("**Platform(s)**"), including but not limited to the current, future and successor platforms to any of the following: Sony PlayStation 2 console video game machine, PlayStation 3 console video game machine, and PlayStation Portable handheld video game machine; Nintendo GameCube console video game machine, GameBoy Advance handheld video game machine, Dual Screen and DSi handheld video game machines, GameBoy Advance Video handheld video game machine, GameBoy Micro handheld video game machine and Wii console video game machine; Microsoft Xbox console video game machine and Xbox 360 console video game machine; personal computers (PC and Mac); Wireless and PDA platforms.

{00020682.DOC/4 / 08/31/2010 04:18 PM}Zuffa LLC - UFC Amended and Restated Merchandise License Agreement to 07 10F.docx
CONFIDENTIAL

2

(i)     The Software Products may be designed to include online, downloadable, and multi-player capabilities associated with any of the foregoing platforms, including digital distribution through services such as PlayStation Home, WiiWare and Xbox Live and Xbox Live Arcade. As used in this Agreement, the term "**Console Products**" means Software Products which are developed to operate on console video game machine Platforms; the term "**Handheld Products**" means Software Products which are developed to operate on handheld video game machine Platforms; the term "**Wireless and PDA platforms**" means Software Products which are developed to operate on personal digital assistant devices, mobile telephones, "smartphone" mobile/cellular telephones and wireless handheld Wi-Fi mobile devices (such as Apple's iPhone, iPad and iTouch; RIM's Blackberry; Android, Palm; Symbian and Windows Mobile), pagers and other wireless device that allow for distribution of mobile content via over-the-air download and/or pre-loaded in such devices; the term "**Social Game Products**" means Software Products which are designed to be operated over so-called social networking sites such as, but not limited to, MySpace and Facebook, and social networking sites operated by hardware manufacturers, regardless of the device or Platform through which such products may be accessed by an end-user; and the term "**Version**" means individually or collectively (as the context may require) any version of a game designed for a Platform. Licensee shall have the right to develop as many Software Products as it desires based on the Property during the Term.

(ii)    Licensee acknowledges that the rights granted to Licensee hereunder do not preclude or prevent Licensor from promoting the Property and its other branded activities over (i) so-called open-ended social network websites such as, but not limited to, MySpace, Facebook, Cyworld, and Bebo, and closed social networking sites operated by hardware manufacturers, including, Social Game Products and/or (ii) web-based "virtual world" sites, regardless of whether such applications include interactive activities generally, which may also appear in interactive game products (for convenience "game-like activities"), and regardless of the device through which such applications may be accessed by an end-user; provided, however, in the event that Licensor desires to produce Social Game Products or game-like activities in connection with a social networking application, Licensor shall first offer Licensee the opportunity to negotiate with Licensor to design and deliver such content to Licensor as follows: (1) Licensor shall deliver to Licensee a "request for a proposal" which will outline Licensor's requirements for the production and delivery of such content; (2) Licensee shall notify Licensor on a timely basis if it is interested in submitting a proposal and shall otherwise comply with Licensor's reasonable scheduling requirements; (iii) if Licensee submits a proposal, the parties will engage in good faith negotiation, and if the parties reach agreement, enter into a separate agreement with respect to such services; provided that if the parties are unable to reach an agreement on such proposal, or Licensee elects not to submit a proposal or Licensee fails to respond to Licensor's request for proposal by the reasonable deadline stated in such request, then Licensor shall be free to engage any other party to produce such content without further obligation to Licensee; provided, however, with respect to Social Game Products produced by or for Licensor as provided hereinabove, Licensor shall account for and pay Licensee in accordance with Section 7(c)(viii) of the main part of the Agreement and Section 5 and 6 of the Additional Terms. Licensee shall have the audit rights of Licensor as set forth in Section 6 of the Additional Terms.

(iii)   Licensor acknowledges that the rights granted to Licensee hereunder do include the right to develop, distribute and/or make accessible and/or actively operate social networking applications and/or on-line communities designed to interact with, promote and market the Licensed Products, and, as provided in Section 11(c), below, and discuss with Licensor promotional opportunities to jointly promote the Licensed Products with Licensor's promotion and exploitation of the Property through social networking applications and/or on-line communities.

(b)     Game peripherals such as strategy guides relating to Version(s) (as defined below) of each game, (limited to one guide per Version) and memory cards (collectively, "**Associated Products**").

{00020682.DOC/4 / 08/31/2010 04:18 PM} Zuffa LLC - UFC Amended and Restated Merchandise License Agreement 10 07 10F.docx
CONFIDENTIAL

3

       (c)      Wireless ancillary applications, including but not limited to static images, information and ringtones, provided that wireless ancillary applications shall not include video content ("**Wireless Ancillary Applications**").

3.      **TERRITORY**: The World ("**Territory**").

4.      **DISTRIBUTION CHANNELS**: Licensee shall have the right to manufacture, sell, distribute and market the sale of Licensed Products by direct distribution or subdistribution through retail and digital distribution channels ("**Distribution Channels**"). Notwithstanding the foregoing, Licensor's prior written consent shall be required with respect to any sublicense agreement, "bundling" or other OEM agreement and with respect to the inclusion of Licensed Products in any compilations with other products not associated with the Property. Although such consent may be exercisable by Licensor in Licensor's sole discretion, Licensor will not unreasonably delay or withhold responding to a request from Licensee to approve a proposed sublicense or compilation agreement. In the event Licensor disapproves of any such opportunity, Licensor shall provide Licensee with a reasonable explanation for such disapproval so as to provide Licensee with an opportunity to reconsider the terms of such opportunity and resubmit for approval.

5.      **TERM**: Begins as of September 11, 2006, through December 31, 2018, with a nine (9) month sell-off period (as described in Schedule "A" hereto), unless sooner terminated as provided in Schedule "A" hereto ("**Term**").

6.      **RIGHTS GRANTED**:

       (a)      In consideration of the payments set forth below, and of and subject to the covenants, undertakings and agreements by Licensee in this Agreement, Licensor hereby grants to Licensee the right to use the Property only in connection with the development, manufacture, sale, distribution, marketing, advertising, packaging, exhibition, exploitation and otherwise vending of the Licensed Products (per Section 2 above), in the Distribution Channels (per Section 4 above) throughout the Territory (per Section 3 above), for the Term (per Section 5 above).

       (b)      The rights granted to Licensee shall be exclusive; provided, however, (i) the rights to develop, manufacture, sell and distribute the Licensed Products set forth in Section 2(c), above, are non-exclusive, and (ii) in the event Licensee (1) fails to commercially release a game on the Wireless and PDA platform and specifically, for Apple's iPhone and iTouch devices, on or before November 24, 2010 and (2) fails to show by March 1, 2010 demonstrable progress in developing a game specifically for Apple's iPhone and iTouch devices for release on or before November 24, 2010, Licensee's rights to manufacture, sell and distribute the Licensed Products for the Wireless and PDA platform shall become non-exclusive. Licensor acknowledges Licensee has satisfied condition (2) above.

7.      **PAYMENT:**



{00020682.DOC/4 / 08/31/2010  04:18 PM } Zuffa LLC - UFC Amended and Restated Merchandise License Agreement 10 07  10F.docx
CONFIDENTIAL

4



{00020682.DOC/4 / 08/31/2010  04:18 PM}Zulfa LLC - UFC Amended and Restated Merchandise License Agreement 10 07  10F.docx
CONFIDENTIAL



8.    **Intentionally omitted.**

9.    **APPROVALS:** All Licensed Products and any related packaging and advertising must be approved by Licensor in writing before distribution or sale by Licensee in accordance with Section 7 of Schedule "A" hereto.

10.   **NOTICES:** All notices, statements and/or payments to be given to the parties hereunder shall be addressed to the parties at the addresses set forth on the first page hereof or at such other address as the parties shall designate in writing from time to time. All notices shall be in writing and shall either be served by personal delivery, mail, or facsimile (if confirmed by mail or personal delivery of the hard copy), all charges prepaid; notwithstanding the foregoing, notices to be sent by the parties for purposes of submitting materials for approval pursuant to Section 7 of Schedule "A" hereto may be by e-mail. Except as otherwise provided herein, such notices shall be deemed given when personally delivered, all charges prepaid, or on the date five (5) days following the date of mailing, except that notices of change of address shall be effective only after the actual receipt thereof. Notices addressed to Licensor shall be sent to the attention of Mr. Kirk Hendrick, Chief Operating Officer, with a copy sent to Ike Lawrence Epstein, Esq., Executive Vice President and General Counsel. Notices addressed to Licensee shall be sent to the attention of Edward Kaufman, Executive Vice President, Business and Legal Affairs, with a copy sent to Dave Davis, Vice President, Studio Operations, THQ Core.

11.   **ADDITIONAL TERMS:**

      (a)    The balance of the terms shall be as set forth in Licensor's Schedule "A", which is attached hereto and incorporated herein by this reference.

      (b)    For each Fighter selected by Licensee to appear (with Licensor's approval) in a Software Product, subject to such Fighter's scheduled commitments to Licensor, Licensor shall cause each such Fighter to be available to Licensee (on dates and at locations to be agreed by the parties) for up to six (6) hours (excluding travel) per year during the Term to be recorded and filmed by Licensee to produce video features and other marketing materials (including but not limited to PR interviews and appearances) for each Software Product. In the event Licensee has a need for time with a Fighter in excess of the allotted six (6) hours, then the parties agree to work together to facilitate the best approach to accomplish the additional requested access.

      (c)    The parties will discuss promotional and sponsorship programs for the Software Products and other products in Licensee's product lines at UFC and/or PRIDE events and in connection with UFC programming. The foregoing shall not be construed as a limitation on Licensee from conducting (at its expense and not as part of a grant of rights to Licensee hereunder) marketing and PR promotions, including but not limited to Fighter appearances and interviews, it being understood that Licensee shall provide Licensor with advance written notice before it contacts any Fighters directly to arrange for appearances and interviews. No video game products in the "fighting" genre (including but not limited to boxing, mixed martial arts or fantasy fighting) from other publishers shall be exhibited at any UFC and/or PRIDE event where Licensor has the ability to control promotional or sponsorship programs. The parties will work together to source product placement and advertising opportunities to be inserted and embedded into Software Products (both static and dynamic ads). Licensor shall have prior written approval over all in-game advertising and in-game product placement, such approvals to be within Licensor's sole discretion. Licensor shall have the right to insert dynamic in-game advertising which will promote scheduled fights and other UFC and/or PRIDE events and neither Licensor nor Licensee shall take any fee of any kind in connection therewith, it being understood that only third party "fees", such as platform fees charged by

{00020682.DOC/4 / 08/31/2010  04:18 PM} Zuffa LLC - UFC Amended and Restated Merchandise License Agreement 10 07 1 OF.docx
CONFIDENTIAL

6

Microsoft or Sony (or their subsidiaries or affiliates) and actual development expenses for integration of such advertising into the software for such Products may be deducted in computing Net Revenues. It being understood that there are limitations on software development with respect to whether or not certain assets can be removed from the Software Products without materially impacting the functionality of the code and, therefore, Licensor shall provide Licensee with prompt written notice of any terminated relationships that affect in-game advertising so that Licensee can determine whether or not such asset may be deleted without materially impacting development and in such instance, any removal of such asset may be accommodated by Licensee on a prospective basis.

(d)     Upon mutual execution, this Agreement supersedes in its entirety the Deal Memo and Original Agreement.

*[Signature Page Follows]*

{00020682.DOC/4 / 08/31/2010 04:18 PM}Zuffa LLC - UFC Amended and Restated Merchandise License Agreement 10 07 10F.docx
CONFIDENTIAL

7

ACCEPTED AND AGREED TO:

ZUFFA, LLC                                THQ INC. ᵇ/ᵗ
("**Licensor**")                         ("**Licensee**")

By: _____              By: _____
        KIRK D. HENDRICK                  Print Name: Brian J. Farrell
        Chief Operating Officer
                                          Title: President and CEO

[REST OF PAGE LEFT INTENTIONALLY BLANK]

{00020682.DOC/4 / 08/31/2010 04:18 PM}Zuffa LLC - UFC Amended and Restated Merchandise License Agreement 10 07 10F.docx
CONFIDENTIAL

8

## SCHEDULE "A" - ADDITIONAL TERMS AND CONDITIONS

1. **PROPERTY:** As used herein and in the Agreement to which this Schedule "A" is attached, the term "**Property**" shall be defined as specified in Section 1 of the Agreement.

2. **LICENSE:** Licensor hereby grants to Licensee and Licensee hereby accepts, the right, license and privilege to develop, manufacture the designated Licensed Products based upon the Property, and to distribute, offer for sale, sell, advertise, promote and otherwise exploit them in the Distribution Channels throughout the Territory during the Term. The rights granted to Licensee shall be exclusive; provided, however, (i) the rights to develop, manufacture, sell and distribute the Licensed Products set forth in Section 2(c) of the Agreement to which this Schedule "A" is attached are non-exclusive, and (ii) in the event Licensee (1) fails to commercially release a game on the Wireless and PDA platform and specifically, for Apple's iPhone and iTouch devices, on or before November 24, 2010 and (2) fails to show by March 1, 2010 demonstrable progress in developing a game specifically for Apple's iPhone and iTouch devices for release on or before November 24, 2010, Licensee's rights to manufacture, sell and distribute the Licensed Products for the Wireless and PDA platform shall become non-exclusive. Licensor acknowledges that Licensee has satisfied condition (2) above. The license granted herein includes the non-exclusive right to use, in the Territory and for the Term, the trade and service marks and names of Licensor, and the logos and art work, if any, embodying them (collectively, the "**Trademarks**").

3. **RESERVED RIGHTS:** The license granted herein does not include any right, title or interest in or to the Property, nor to any copyrights, patents, and/or trademarks therein or associated therewith, nor to the Trademarks not specifically granted to Licensee herein. All rights not specifically granted to Licensee herein are reserved to Licensor without restriction. Licensee agrees to furnish to Licensor, at a price equal to its cost plus 10% and shipping, any number of Licensed Products ordered by Licensor for sale by or for Licensor through its online store and/or at Licensor's events (including fights and "fan expos"), it being agreed by Licensor that (i) such sales to Licensor by Licensee are royalty-free sales, and (ii) any such Licensed Products which may be sold by Licensor shall be priced consistent with Licensee's then current suggested retail price for such Licensed Products.

## 4. MANUFACTURING AND DISTRIBUTION OBLIGATIONS/MARKETING DATE:

(a)    (i)    If, subsequent to the commencement of marketing and distribution of any Licensed Product, Licensee fails to actively continue marketing and distributing any units of said Licensed Product in any of the Major Territories (as defined below), Licensor may terminate Licensee's right to manufacture, sell and distribute the particular Licensed Product in such Major Territory on six (6) months written notice, unless Licensee shall, within such period, have recommenced distribution of such Licensed Products within such portion of the Territory, failing which, Licensor may thereafter arrange for the sale and distribution of such License Products for its own account. Failure by Licensee to actively market and distribute Licensed Products shall be deemed a material breach of this Agreement.

(ii)    As used herein, the term "Major Territories" means (1) the United States, Canada, Mexico, Austria, Belgium, Denmark, France, Germany, Greece, Ireland, Italy, Latvia, Netherlands, Poland, Portugal, Spain, Sweden, Switzerland, United Kingdom, Russia, Australia, New Zealand, Japan, Korea, China and Taiwan (for convenience, the foregoing countries may sometimes be referred to as "Core Major Territories"); and (2) any other country where Licensor elects to commence to actively promote the Property through the staging of its live events or distribution of video productions derived from its live events ("Additional Major Territories").

(iii)    Notwithstanding the provisions of Section 4(a)(i), above, with respect to China, Korea and Taiwan (the "Online Territories"), Licensee has informed Licensor of its plans to develop and promote Licensed Products which will be directed at exploiting the online gaming infrastructure which currently predominates in such Online Territories over the sale of packaged retail products and that Licensee intends to commence the marketing of such Licensed Products in conjunction with the scheduled release of a new Licensed Product in 2011. Provided that Licensee (1) commences such activities in 2011 and (2) qualifies to extend the Term to the Extension Term and so elects to extend the Term to the Extension Term, Licensor agrees that it may not exercise its termination rights under Section 4(a)(i), above, with respect to such Online Territories unless and until Licensor provides written notice to Licensee, following the commencement of the Extension Term, of Licensee's failure to actively continue marketing and distributing any units of said Licensed Products in any of the Online Territories and Licensee fails to recommence distribution of such Licensed Products within such portion of the Online Territories as required by Section 4(a)(i), above; provided however, if Licensee's failure to commence marketing and distributing, and/or

{00020682.DOC/4 / 08/31/2010  04:18 PM} Zuffa LLC - UFC Amended and Restated Merchandise License Agreement 10 07 1OF.docx
CONFIDENTIAL

9

continue actively marketing and distributing any units of said Licensed Products in any of the Online Territories is due to the refusal of governmental authorities to license or permit the distribution of Licensed Products in such country, despite Licensee's efforts to seek such licenses and permits, and the refusal of governmental authorities to license or permit the distribution of Licensed Products in such country is based on objections with respect to the Property, then Licensor agrees that so long as Licensee is unable to obtain a license or permit to distribute Licensed Products in such Online Territory for the aforesaid reasons, it may not exercise its termination rights under Section 4(a)(i), above, with respect to such Online Territories. Licensee shall meaningfully consult with Licensor in connection with its efforts to seek licenses and permits to distribute the Licensed Products in each of the Online Territories.

(iv)     Further notwithstanding the provisions of Section 4(a)(i), above, with respect to the Additional Major Territories, to qualify as an "Additional Major Territory," Licensor shall furnish Licensee with not less than sixty (60) days prior written notice for each country outside of the Core Major Territories where Licensor elects to commence to actively promote the Property through the staging of its live events or distribution of video productions derived from its live events (an "Additional Major Territory Notice"). For any Additional Major Territories for which Licensee has not, as of the date of receipt of Licensor's Additional Major Territory Notice, commenced the marketing and distribution of any Licensed Product, Licensee shall thereafter make arrangements to commence the marketing and distribution of Licensed Products in conjunction with Licensor's activities in such Additional Major Territory(ies) and Licensor may not exercise its termination rights under Section 4(a)(i), above, with respect to such Additional Major Territories unless and until Licensor provides written notice to Licensee of Licensee's failure to actively market and distribute any units of said Licensed Products in any such Additional Major Territory and Licensee fails to recommence distribution of such Licensed Products within such Additional Major Territory as required by Section 4(a)(i), above.

(v)     In the event that Licensor exercises its termination rights pursuant to the provisions of this Section 4(a), Licensee may, notwithstanding any such termination, continue to permit consumers and end users in any such affected country to access online game activities organized by Licensee, as long as such activities do not rely on servers or portals operated by Licensee in such countries.

(b)     Licensee acknowledges that Licensor is entering into this Agreement not only in consideration of the payments to be made by Licensee, but also in consideration of the promotional value to it and to the Property of the widespread distribution, sale, advertising and promotion of the Licensed Products. Accordingly, while Licensee has not made and does not hereby make any representation or warranty with respect to the quantity of sales of Licensed Products which Licensee may sell, Licensee shall use all reasonable commercial efforts to procure the greatest volume of sales of the Licensed Products consistent with high quality and shall use all reasonable commercial efforts to make and maintain timely and adequate arrangements for their manufacture, distribution, advertising and promotion.

(c)     Licensee shall distribute and sell the Licensed Products outright at a competitive price, and not on approval, consignment, sale-or-return, or any similar basis, and further, only to jobbers, wholesalers, and retailers for distribution and sale to retail stores and merchants. At no time during this Agreement may Licensee sell the Licensed Products with discounts, allowances and/or markdowns off of Licensee's average gross invoice price (as defined below) which exceed the amounts specified in Section 7(b) of the Agreement to which this Schedule "A" is attached, or sell the Licensed Products as "closeouts" or engage in "dumping" the Licensed Products, without Licensor's prior written consent, not to be unreasonably withheld or delayed. **Licensee may not enter into any agreement with any third party for the manufacturing or distribution of any of the Licensed Products without Licensor's prior written consent.** Notwithstanding the previous sentence, Licensor hereby consents to Licensee (i) entering into agreements to utilize the services of the console manufacturers (i.e., Sony, Microsoft and Nintendo) or their designees with respect to manufacturing the Licensed Products, and (ii) entering into agreements to sell finished and fully packaged Licensed Products to distributor customers in the ordinary course of business, both of the foregoing without the need for further action on Licensee's part.

(d)     The license granted herein shall be exercised solely in the Distribution Channels in the Territory and solely with respect to the Licensed Products. Licensee shall not advertise, promote, sell or market, directly or indirectly, Licensed Products in any geographic area other than the Territory or authorize the shipment of Licensed Products outside of the Territory or sell Licensed Products to any party that Licensee knows or reasonably should know will sell such Licensed Products outside of the Territory; provided that to the extent that the Territory is a part of the European Community ("EC") or European Free Trade Area ("EFTA"), in the event that Licensee receives

{00020682.DOC/4 / 08/31/2010 04:18 PM} Zuffa LLC - UFC Amended and Restated Merchandise License Agreement 10 07 10F.docx
CONFIDENTIAL

10

unsolicited requests from third parties outside the Territory, but within the EC or EFTA, wishing to purchase units of the Licensed Products, Licensee may fulfill such requests and shall report and account for such sales to Licensor in the same manner as Licensee is required to report and account for sales of Licensed Products in the Territory.

(e)     During the Term of this Agreement, Licensee shall not sell, market, or otherwise promote any products featuring artwork or designs substantially or confusingly similar in style to the Property. Without limiting the generality of the foregoing, Licensee shall not enter into any agreement with any party other than Licensor to develop, manufacture, sell, distribute and market any interactive game products to be commercially released during the Term of this Agreement, featuring any non-UFC mixed martial arts fighters and competitions (whether professional or amateur), except for agreements with third parties which are related to the development, manufacture, sale, distribution and marketing of the Licensed Products pursuant to this Agreement. Notwithstanding the foregoing, Licensor acknowledges that Licensee is party to one or more license agreements with World Wrestling Entertainment ("**WWE**") and that the video and computer games which THQ has developed, manufactured and sold under such license agreements and which THQ may hereafter develop, manufacture and sell under such license agreements (the "**WWE Games**") do not fall within the restrictions of this Section 4(e), provided that any depiction of mixed martial arts fighting techniques which may be depicted in such WWE Games will only be incidental to, and not a substantial component of, the action otherwise depicted in the WWE Games.

(f)     Intentionally omitted.

(g)     Licensee shall use reasonable efforts to advise Licensor concerning market information that comes to Licensee's attention (and research the Licensee may conduct) respecting Licensor, the Licensed Products, Licensor's market position or the continued competitiveness of the Licensed Products in the marketplace. Licensee will confer with Licensor from time to time at the reasonable request of Licensor on matters relating to market conditions, sales forecasting and product planning relating to the Licensed Products. Failure by Licensee to comply with this Section 4(g) shall not be a material breach of the Agreement provided that Licensee shall cure any such non-compliance in a commercially reasonable time.

5.     **PAYMENT:**



{00020682.DOC/4 / 08/31/2010 04:18 PM} Zuffa LLC - UFC Amended and Restated Merchandise License Agreement 10 07 10F.docx
CONFIDENTIAL

11



## 6.    ACCOUNTING AND AUDIT:

(a)    Licensee shall render accounting statements to Licensor (in a form mutually agreed by the parties) on a quarterly (calendar year) basis within 60 days of the end of each quarter, whether or not any payment is shown to be due to Licensor thereunder, and remit payments due Licensor along with such statements. The first such statement shall be furnished to Licensor following the calendar quarter in which Licensee commences the commercial release of the first Licensed Product hereunder. If the Territory covers more than one country, accounting statements shall be separated on a country-by-country basis. Such statements must include the following:  (i) the quantity and category (i.e., SKU) description for each item of the Licensed Products sold; (ii) Licensee's average gross invoice price and gross invoice price with respect to each Licensed Product; (iii) sales by the Licensee with respect to each such Licensed Product; (iv) returns, if any are allowed, with respect to each such Licensed Product; and (v) a calculation of the Royalty and remaining Guarantee balance, if any. Licensee shall have the right to retain, as a reserve against charges, credits, markdowns, and returns, such portion of accrued Royalties as shall be reasonable in Licensee's best business judgment, provided that each such reserve shall not exceed fifteen percent (15%) of accrued Royalties and shall be liquidated, on a rolling basis and paid to Licensor within three (3) calendar quarters of when such reserve was first established. All payments shall be made in US Dollars and, except as provided in Section 7(b) of the Agreement to which this Schedule "A" is attached, shall be without set-off of any amount or nature whatsoever whether based upon any claimed debt or liability of Licensor to Licensee.  Sums not paid when due shall bear interest compounded daily from the original due date until the date of actual receipt of payment, at the rate of one and one-half percent (1.5%) per month (or such lesser amount as may be permitted under the laws of the State of Nevada) without prejudice to any other rights of Licensor in connection therewith. The receipt and deposit of monies by Licensor shall not prevent or limit Licensor's right to contest the accuracy and/or correctness of any statement in respect of such monies. All statements of Royalties rendered by

{00020682.DOC/4 / 08/31/2010  04:18 PM} Zuffa LLC - UFC Amended and Restated Merchandise License Agreement 10 07  1OF.docx
CONFIDENTIAL

Licensee hereunder shall be conclusive, final, and binding on Licensor, unless a written objection thereto is given by Licensor to Licensee within two (2) years after the date rendered.

(b)     Licensee shall keep accurate books of account and records covering all transactions relating to this Agreement and shall retain such documents in its possession or under its control relating to this Agreement, at Licensee's principal place of business for not less than two (2) years after the expiration of the Term or earlier termination of the Agreement and shall allow Licensor and its representatives, upon reasonable prior written notice, to audit said books of account and records and to make copies thereof at Licensor's expense, but not more often than once each calendar year. Such records shall include, without limitation, purchase orders, invoices, inventory records and such other financial records which will support accounting statements rendered by Licensee to Licensor hereunder. In the event a deficiency is discovered in paid Royalties for any quarter, Licensor shall promptly notify Licensee in writing of such deficiency in sufficient detail as to provide Licensee with the ability to verify (and pay) or meaningfully object to the claimed deficiency within ten (10) days of the discovery of such deficiency. If any such audit reveals Royalties due to Licensor exceeding five percent (5%) of the Royalties paid to Licensor for the period covered by such audit, all auditing fees, costs and expenses shall be borne by Licensee, plus interest on the amount due, computed from the first due date of the applicable accounting period in which such Royalties were found to have been unpaid. If such an audit reveals a discrepancy of more than fifteen percent (15%) in book inventory versus physical inventory, Licensee shall be required to pay Licensor the Royalty on the missing Licensed Products. If any such audit reveals Royalty payments due to Licensor in excess of twenty percent (20%) of the Royalties paid to Licensor for the period covered by such audit, and such underpayment is not the result of a one-time inadvertent clerical accounting error made by Licensee, then, in addition to any and all other rights, legal and/or equitable, of Licensor, Licensor shall have the right to immediately terminate this Agreement upon notice to Licensee.

(c)     Licensor and its authorized representative may, as part of an audit, request a certified physical inventory; in addition, upon request from Licensor (not more frequently than once per year during the Term and any Sell-Off Period) Licensee shall perform a certified physical inventory of the Licensed Products and shall provide Licensor with documentation of the physical inventory count. If any of the Licensed Products have been destroyed (including damaged goods), Licensee shall, at Licensor's request, provide Licensor or its authorized representative with certificate of destruction.

## 7.     APPROVALS/ARTWORK/SAMPLES:

(a)     The quality of the Licensed Products and all packaging, labels, press releases, advertising, promotional, display and any other material prepared in connection with the Licensed Products (collectively, "**Packaging and Promotional Material**") shall be of the highest standard, no less than the best quality of similar material presently manufactured, distributed, sold and/or used by Licensee in the Territory for like goods and shall be produced in accordance with all applicable laws, including labor laws, and shall meet all applicable product safety, consumer protection, and product liability requirements, including those provided by federal, state, and local laws and regulations, and also those requirements covering the activities of Licensee adopted by the industry whereunder Licensee operates; and Licensee shall at all times conduct its business in accordance with such laws, regulations, and requirements under this Agreement.

(b)     **Licensor shall have approval of the Licensed Products and all Packaging and Promotional Material at all stages of the development and application thereof as described in Section 7(c) below, and prior to any use thereof by or on behalf of Licensee. Any acts by Licensee contrary to the terms of this Section shall be deemed a material breach of this Agreement.**

(c)     Development of the Software Products, including the design of components of game play, user interface and feature sets shall be made by Licensee, it being understood that the selection of in-game content, Fighters, personalities, music and environments shall be by mutual agreement of the parties. Licensee shall submit in a timely manner for Licensor's approval all Licensed Products at the following stages of development: with respect to Software Products, all character renderings and models, list of music selections, environments, arenas, first playables, code complete build, quality assurance verifiable build, tuning complete build and gold master submission candidates (prior to submission to a Platform manufacturer for approval for manufacture) and a pre-production sample and a production sample of each proposed item of Packaging and Promotional Material and Associated Products and wireless applications, which Licensee proposes to use in connection with activities hereunder, including the promotion or sale of the Licensed Products. All submissions shall be made prior to any use thereof, or public disclosure thereof, by or on behalf of Licensee. Any submission not approved in writing (including e-mail)

{00020682.DOC/4 / 08/31/2010  04:18 PM} Zuffa LLC - UFC Amended and Restated Merchandise License Agreement 10 07 10F.docx
CONFIDENTIAL

13

by Licensor's chief marketing officer within ten (10) days (the "**Approval Period**") shall be deemed disapproved. In the event that Licensor fails to respond to a submission for approval within the Approval Period, Licensee may deliver a written notice to Licensor requesting an approval or disapproval of the item submitted; if Licensor fails to respond to such notice within two (2) business days after receipt thereof by Licensor, then the item so submitted shall be deemed approved. Any disapproval from Licensor shall be accompanied by a statement from Licensor of the changes that need to be made to the item submitted in order for Licensee to secure Licensor's approval therefor. Licensor shall not disapprove elements previously approved unless the new submission contains a material alteration to the item previously submitted and approved. Licensor acknowledges that, due to limitations on software development, Licensee may not be able to remove assets or make certain changes designated by Licensor for removal or change from a Software Product without materially impacting the functionality of the code and in such instance, any removal or change in a Software Product may be accommodated by Licensee on a prospective basis. At such time as Licensor approves the final gold master submission candidate of a Software Product hereunder, or the final production sample of other Licensed Products and Packaging and Promotional Material, Licensee shall make no changes whatsoever to such Licensed Product without first re-submitting such Licensed Product to Licensor for approval in the manner provided for in this Section 7, except with respect to "bug" corrections (as such process is generally understood in the video game industry) that are not substantive to the end user visual display. Licensor hereby acknowledges that it has approved for publication the games entitled *"UFC: Undisputed 2009"* and "*UFC Undisputed 2010*" including the manuals and packaging therefor.

(d)     Licensee shall allow Licensor or its designee to enter Licensee's premises and (to the extent under Licensee's control) all development and manufacturing facilities during regular business hours, upon reasonable prior written notice, for the purpose of inspecting the Licensed Products, Packaging and Promotional Material and the facilities in which they are manufactured and packaged. In the event that the quality standards hereinabove referred to are not met, Licensee shall, upon written notice from Licensor, discontinue the manufacture and distribution of such Licensed Products and/or the Packaging and Promotional Material related thereto, unless Licensee shall have remedied such failure of quality to Licensor's satisfaction within ten (10) days after Licensee's receipt of notice thereof; failure to effect such remedial measures shall entitle Licensor to terminate this Agreement upon notice to Licensee. Licensor hereby acknowledges and approves the console manufacturers (i.e., Sony, Microsoft and Nintendo) as being of acceptable quality with respect to manufacturing the Licensed Products.

(e)     Licensee shall furnish to Licensor at no charge ninety-six (96) samples of each Licensed Product at the commencement of distribution thereof. Each sample may be used by Licensor for promotional purposes only and are not to be resold by Licensor. Licensee shall also furnish to Licensor at no charge twenty five (25) copies of each item of Packaging and Promotional Material within thirty (30) days each such item is delivered to Licensee for internal use and archive purposes only and not for distribution or give-aways. Failure by Licensee to comply with this Section 7(e) shall not be a material breach of the Agreement provided that Licensee shall cure any such non-compliance in a commercially reasonable time.

## 8.     GOODWILL, PATENTS, TRADEMARKS AND COPYRIGHT:

(a)     Licensee recognizes and acknowledges that: (i) the Trademarks are the trademarks of Licensor, whether or not registered as such; (ii) the good will associated with the Property and the Trademarks inures solely and exclusively to Licensor; and (iii) the Property and the Trademarks have acquired, and will continue indefinitely to have and to acquire, a secondary meaning in the minds of the public.

(b)     Licensee shall not acquire any rights in the Property and/or Trademarks as a result of Licensee's use thereof, and all use by Licensee shall inure to Licensor's benefit. Licensee shall not, directly or indirectly, during the Term or thereafter, attack Licensor's ownership of the Property, the Trademarks or the validity thereof or attack the validity of the license granted herein, or apply for any registration or file any document or take any action which would affect Licensor's ownership of the Property or the Trademarks or knowingly aid or abet anyone else in doing so, or use or authorize the use of any trademark, trade name or words, symbols or combination thereof or other designation identical with or confusingly similar to the Trademarks or to any element of the Property, whether or not such element shall have been protected by patent, trademark or copyright.

(c)     Except as provided in Section 8(f), below, all copyright, patent and trademark in the Licensed Products and Packaging and Promotional Material shall be in Licensor's name. Licensee shall cause such copyright, patent and trademark notices ("**IP Notices**") to appear on or within each unit of the Licensed Products and/or the Packaging and Promotional Material as may be designated in writing and approved by Licensor. Licensor shall not

{00020682.DOC/4 / 08/31/2010  04:18 PM}Zuffa LLC - UFC Amended and Restated Merchandise License Agreement 10 07  10F.docx
CONFIDENTIAL

14

change, modify or disapprove elements of the IP Notices previously provided in writing and/or approved unless the item to which it is affixed contains a material alteration to the item previously submitted for IP Notice designations and approval. Any and all additions to, and new renderings, modifications or embellishments of, the Artwork shall, notwithstanding their invention, creation and use by Licensee, be and remain the property of Licensor, and Licensor may use, and license others to use, the same, subject only to the provisions of this Agreement. Licensee shall not permit any of its employees or independent contractors to obtain or reserve, by written or oral agreement or otherwise, any rights as "authors" or "inventors" of any such artwork or designs (as such terms are used in present or future U.S. copyright and/or patent statutes or judicial decisions). Licensee shall furnish to Licensor, at Licensor's request, full information concerning the invention and creation of such artwork and designs, together with the originals of assignments of all rights therein obtained from all such third parties to Licensor. An inadvertent failure by Licensee to comply with this Section 8(c) shall not be a material breach of the Agreement, provided that Licensee shall cure any such non-compliance on a prospective basis.

(d)     Licensee shall use commercially reasonable efforts to cooperate with Licensor in protecting the Property and/or the Trademarks, and shall promptly supply Licensor with any information or materials reasonably required by Licensor and requested in writing, such as, but not limited to a list of countries throughout the Territory in which Licensed Products are offered for sale or sold by Licensee or its sub-licensee(s) and the date(s) of first use of the Licensed Products in each of the listed countries. If Licensee learns of any unauthorized use of the Property in the Territory, Licensee shall promptly advise Licensor in writing of the nature and extent of same. Licensor may, in its sole discretion, take, or elect not to take, such action as it deems advisable against any infringing party; where time and circumstances permit, Licensor shall consult with Licensee with respect to actions it may elect (or not) to take against an infringing party. Licensor shall incur no liability to Licensee by reason of Licensor's failure or refusal to prosecute, or permit Licensee to prosecute, any alleged infringement by third parties, nor by reason of any settlement to which Licensor may agree. Only if any such infringement is in the nature of imitation of the Licensed Products or Packaging and Promotional Material (e.g., pirated games), may Licensee, with Licensor's prior written consent and at Licensee's expense, commence an action (itself or under the auspices of video and computer game industry anti-piracy actions brought by industry trade organizations) or join in Licensor's action against the infringer.

(e)     Unless otherwise approved in writing by Licensor, each unit of the Licensed Products and each item of the Packaging and Promotional Materials shall have imprinted thereon the Licensor's color brand logo.

(f)     Notwithstanding the provisions of Section 8(c), above of these Additional Terms and Conditions, except with respect to elements of the Property which are utilized or depicted by Licensee in the Software Products (including without limitation, as displayed in the audio-visual display), Licensor shall not own and Licensee shall retain all right, title and interest in and to the copyright or other intellectual property rights in the computer software developed by Licensee, or on its behalf, and embodied in the Software Products, including, but not limited to, the game engine, interface, and navigational screens, source codes, object codes and documentation thereof, programs, designs, concept, original audio-visual elements, three-dimensional models, video, animation data, game controller scheme, music commissioned to be composed by or for Licensee to be embodied in the Software Products, sounds, documentation and any other elements developed for and used in the Software Products ("**Licensee's IP**"). Licensee acknowledges and agrees that if it seeks to register the copyright to and in any Version of the Software Products, Licensee shall identify the Property as preexisting material in such applications for registration and expressly disclaim all right, title and interest in and to the Property. Licensee shall not file any such application for copyright registration without first notifying Licensor and providing Licensor with a copy of any such applications (after filing same). Nothing in this Agreement shall be construed to limit Licensee's right to register the copyright to or seek protection for Licensee's IP separate and apart from the Property. Upon the expiration or earlier termination of this Agreement, Licensee shall not use either the Property or the Software Products for any purposes whatsoever.

## 9.     WARRANTIES AND INDEMNIFICATION:

(a)     Licensee represents and warrants that

(i)     This Agreement has been duly authorized, executed and delivered by Licensee; Licensee has the full power and authority and is free to enter into this Agreement and to perform its obligations hereunder; this Agreement constitutes Licensee's valid and binding obligation, enforceable in accordance with its terms; and the making of this Agreement by Licensee does not violate any Agreement, right or obligation existing between Licensee on the one hand, and any other person, firm or corporation, on the other hand.

{00020682.DOC/4 / 08/31/2010  04:18 PM} Zuffa LLC - UFC Amended and Restated Merchandise License Agreement 10 07  10F.docx
CONFIDENTIAL

(ii)    With respect to Licensee's IP and new material which may be developed by or for Licensee and embodied in the Licensed Products or Packaging and Promotional Material which may be produced by Licensee pursuant to this Agreement, and which material is not derivative of any Property or otherwise the subject of Licensor's representations and warranties, below, (A) such material shall not infringe upon any common law or statutory rights or intellectual property rights of any third party including, without limitation, contractual rights, patents, copyrights, trademark, mask-work rights, trade secrets, rights of privacy and other intellectual property rights; and (B) Licensee shall ensure that Licensee's ownership of Licensee's IP, and Licensee's ability to exploit same as contemplated by this Agreement, is not impaired, in whole or in part, by any "open source" or quasi-open source license agreement.

(iii)    Each Software Product developed by Licensee hereunder and Licensee's Computer Software shall not contain (A) any computer code designed to disrupt, disable or harm a computer program or computer system or console system or damage or destroy any data files residing on a computer system or console system without the user's consent and shall not adversely affect the hardware or other software of any user thereof in any way; and (B) any hidden content or features (including, but not limited to, so-called "easter eggs," content unlocked by cheat codes and the like) that have not been affirmatively disclosed to Licensor in writing, including all pertinent and most extreme content related to every ratings criterion contemplated by Licensee.

(iv)    Each Software Product developed by Licensee pursuant to this Agreement operates in accordance with the user manual for each such product.

(v)    Subject to Licensee's business judgment of market conditions relating to the sale of Software Products, it will utilize the Property in a manner consistent Licensee's past practices with other similar licensed properties and.

(b)    Licensor represents and warrants that

(i)    It is the sole owner of, or controls the Property throughout the Territory and has the right to enter into and perform this Agreement and to grant the rights granted hereunder.

(ii)    The Property, as provided to Licensee for uses expressly set forth herein and approved by Licensor as provided hereinabove is not subject to any restrictions, liens, agreements, encumbrances or any rights of others of any kind or nature whatsoever which would prevent Licensee from exploiting rights licensed under this Agreement.

(iii)    Licensee's use of the Property, as authorized hereunder does not and will not violate or infringe any intellectual property right of any third party and shall be free of any third party claim of infringement of any patent, trademark, or copyright or other proprietary right (including rights of publicity and privacy).

(iv)    There is no demand, claim, suit, action, arbitration or other proceeding pending or threatened which questions or challenges Licensor's ownership or control of the Property nor does there exist any reasonable basis for any such demand, claim, suit, action, arbitration or other proceeding.

(c)    Licensor makes no representation or warranty as to the amount of receipts Licensee will derive or as to the quality or success of the Property or reception it will receive by the public.

(d)    Licensee shall indemnify, hold harmless, and defend Licensor, its parent, affiliated and subsidiary companies, and its and their members, officers, directors, agents and employees and the Fighters ("**Licensor Indemnitees**") from and against any and all liabilities, claims, causes of action, suits, losses, damages, fines, judgments, settlements and expenses (including reasonable attorneys' fees and court costs) which may be suffered, made or incurred by any of such Licensor Indemnitees arising out of any breach or alleged breach of any of the covenants, warranties, representations and agreements made by Licensee herein, including without limitation, claims relating to or based upon: (i) unauthorized use of, or infringement of any patent, trademark, design, copyright or other proprietary or privacy right of a third party by Licensee; (ii) artwork or other material relating to the Property created, modified and/or used by Licensee in connection with the Licensed Products without Licensor's approval; and/or (iii) defects in the Licensed Products, despite Licensor's approval thereof, it being understood and agreed that

{00020682.DOC/4 / 08/31/2010  04:18 PM} Zuffa LLC - UFC Amended and Restated Merchandise License Agreement 10 07  10F.docx
CONFIDENTIAL

16

any governmental order of recall or injunction against distribution and/or sale shall, as between Licensor and Licensee, be deemed conclusive proof of such defect for the purpose of invoking the Indemnifications set forth herein. Licensor and Licensee shall give the other prompt written notice of the institution of any action or the making of any claim alleging a breach hereunder. Licensee shall have the right to control all aspects of the disposition of such claim, and Licensor shall cooperate with Licensee in connection therewith. Licensee shall bear full responsibility for the defense (including any settlements) of any such claim; provided however, that Licensee shall keep Licensor informed of, and consult with Licensor in connection with the progress of such litigation or settlement and provided further that Licensee may not settle any action, suit or proceeding that contains a stipulation, admission or acknowledgement of wrongdoing or liability on the part of Licensor or requires the payment of any money by Licensor in addition to the payment of money specified in this Agreement without Licensor's permission. Notwithstanding anything to the contrary contained herein, in the event any claim giving rise to the indemnification hereunder is a result of Licensor's breach of this Agreement, then Licensee shall not be required to indemnify Licensor.

(e)     Licensor shall indemnify, hold harmless, and defend Licensee, its parent, affiliated and subsidiary companies, and their members, officers, directors, agents and employees ("**Licensee Indemnitees**") from and against any and all liabilities, claims, causes of action, suits, losses, damages, fines, judgments, settlements and expenses (including reasonable attorneys' fees and court costs) which may be suffered, made or incurred by any of such Licensee Indemnitees arising out of any breach of any of the covenants, warranties, representations and agreements made by Licensor herein arising solely (i) out of use by Licensee of the Property as authorized in this Agreement, and/or (ii) out of a claim made with respect to a Licensor-Secured Ad/Placement. Licensee and Licensor shall give the other prompt written notice of the institution of any action or the making of any claim alleging a breach hereunder. Licensor shall have the right to control all aspects of the disposition of such claim, and Licensee shall cooperate with Licensor in connection therewith. Licensor shall bear full responsibility for the defense (including any settlements) of any such claim; provided however, that Licensor shall keep Licensee informed of, and consult with Licensee in connection with the progress of such litigation or settlement and provided further that Licensor may not settle any action, suit or proceeding that contains a stipulation , admission or acknowledgement of wrongdoing or liability on the part of Licensee or requires the payment of any money by Licensee in addition to the payment of money specified in this Agreement without Licensee's permission. Notwithstanding anything to the contrary contained herein, in the event any claim giving rise to the indemnification hereunder is a result of Licensee's breach of this Agreement, then Licensor shall not be required to indemnify Licensee.

10.     **INSURANCE:** Licensee shall obtain and maintain throughout the Term, at Licensee's sole expense, standard Product Liability Insurance, Advertiser's Liability Insurance and Errors and Omission Insurance from a reputable insurance company qualified to do business in the State of California, naming Licensor as an additional insured. Coverage under each policy will be a minimum of Ten Million Dollars ($10,000,000) for each instance and Ten Million Dollars ($10,000,000) in the aggregate. Each such policy shall require that Licensor receive at least thirty (30) days written notice of the cancellation, amendment or endorsement thereof. Licensee shall furnish Licensor within thirty (30) days of the mutual execution of this Agreement with certificates of insurance and certified policy endorsements evidencing that the insurance coverage is in full force and effect.

11.     **TERMINATION:**

(a)     If Licensee materially breaches this Agreement, including, but not limited to, the labeling procedures of Section 8 above (taking into account any occurrence of an inadvertent failure which is described in Section 8(c), above), and the approval procedures of Section 7 above, files or has filed against it a petition in bankruptcy or is adjudged a bankrupt, or if Licensee becomes insolvent, or makes an assignment for the benefit of creditors, or discontinues its business or a receiver is appointed for Licensee or Licensee's business who is not discharged within thirty (30) days, Licensor may terminate this Agreement (i) on thirty (30) days prior written notice, provided Licensee shall not have remedied such failure to Licensor's satisfaction within such thirty (30) day period; and (ii) immediately on notice from Licensor in the event Licensee files or has filed against it a petition in bankruptcy or is adjudged a bankrupt, or if Licensee becomes insolvent, or makes an assignment for the benefit of creditors, or discontinues its business or a receiver is appointed for Licensee or Licensee's business who is not discharged within thirty (30) days. If Licensor terminates this Agreement due to breach of any of the terms or conditions hereof by Licensee, Licensee shall have no right to sell, distribute or otherwise dispose of any units of the Licensed Products without Licensor's prior written consent and Licensor, at its discretion, may terminate any and all other agreements between Licensor and Licensee. Termination of this Agreement by Licensor shall in no way reduce the Guarantee required to be paid

to Licensor hereunder. Further, no creditor, agent, representative, receiver or trustee of Licensee shall have the right to dispose of any units of the Licensed Products without the prior written consent of Licensor.

(b)    Upon the expiration of the Term or earlier termination of this Agreement: (i) all rights, licenses and privileges granted to Licensee hereunder shall automatically revert to Licensor; (ii) Licensee shall, in Licensor's discretion, either deliver to Licensor materials which reproduce the Licensed Products (not including Licensee's IP) or give to Licensor satisfactory proof of the destruction thereof; (iii) all sums due Licensor hereunder, whether in the form of unpaid Advance, Royalties and/or Guarantee shall become immediately due and payable in full to Licensor without set off of any kind; (iv) Licensee shall, within one (1) month after such expiration or termination, deliver to Licensor a complete and accurate inventory of all units of the Licensed Products on hand and/or in the process of manufacture, as of both the date of such expiration or termination and the date of such statement and Licensor shall have the right, upon prior notice, to enter onto Licensee's premises during normal business hours to conduct an inspection of the physical inventories to verify the accuracy of said statement; (v) provided this Agreement is not terminated due to material breach by Licensee, Licensee may sell off then existing inventories of the Licensed Products on a non-exclusive basis for a period of nine (9) months, subject to all the other terms and conditions hereof, and provided the same have not been manufactured solely or principally for sale during such period, unless otherwise approved by Licensor in writing, and only after first giving Licensor the opportunity to purchase the same at Licensee's cost of manufacture thereof plus shipping, which purchase may be of some or all of such units, in Licensor's sole discretion; and (vi) all original artwork bearing or incorporating the Property and/or the Trademarks in the custody or control of Licensee shall be returned to Licensor and any other materials incorporating, displaying or otherwise making use of the Property and/or the Trademarks, including, but not limited to, plates, masks, transparencies, negatives, screens, and the like, computer files, or other electronic means of incorporating or embodying same, as well as any other non-product representations bearing or incorporating the Property and/or the Trademarks owned by, or within the custody or control of, Licensee, shall be destroyed and all computer files shall be deleted from Licensee's computers and License shall deliver to Licensor a certification of such destruction and/or deletion signed by an authorized signatory of Licensee. The foregoing shall not apply to the Licensee's IP.

(c)    No waiver by either party hereto of any breach of this Agreement shall be deemed to be a waiver of any preceding or succeeding breach of the same or any other provision hereof. The exercise of any right granted to either party hereunder shall not operate as a waiver. The normal expiration of the Term of this Agreement shall not relieve either party of its respective obligations accruing prior thereto, nor impair or prejudice the respective rights of either party against the other, which rights by their nature survive such expiration.

12.    **MISCELLANEOUS:**

(a)    **INJUNCTION:** Licensee acknowledges that its failure to perform any of the material terms or conditions of this Agreement may result in immediate and irreparable damage to Licensor. Licensee also acknowledges that there may be no adequate remedy at law for such failures and that in the event thereof Licensor shall be entitled to seek equitable relief in the nature of injunction and to all other available relief, at law and/or in equity.

(b)    **CONFIDENTIALITY:** Other than as may be required by any applicable law, government order or regulation, or by order or decree of any court of competent jurisdiction (**"Compelled Disclosure"**), each party hereto will regard and preserve as strictly confidential all information and material, including the terms and conditions of this Agreement and the subject of this Agreement notice, development and marketing information, manufacturing information, and customer or client information, provided by the other party (hereinafter **"Confidential Information"**). Any Compelled Disclosure shall be preceded by a notice to the non-disclosing party and the disclosing party shall use reasonable efforts to assist the non-disclosing party in obtaining a protective order if desired. The parties hereto further acknowledge and agree that, in the event of a breach or threatened breach of this Section 12(b), the other may have no adequate remedy in money or damages and, accordingly, shall be entitled to preliminary, permanent and other injunctive relief without having to post bond or prove irreparable injury. The parties hereto agree that neither party will have any obligation in connection with specific Confidential Information of the other to the extent, but only to the extent, that (i) such Confidential Information is already or becomes publicly known or otherwise through no wrongful act of the disclosing party or (ii) such Confidential Information is rightfully received by the disclosing party from a third party without restriction and without breach of this Agreement.

{00020682.DOC/4 / 08/31/2010 04:18 PM} Zulfa LLC - UFC Amended and Restated Merchandise License Agreement 10 07 10F.docx
CONFIDENTIAL

18

(c)     **NO ASSIGNMENT:** This Agreement and the license rights granted to Licensee hereunder and the obligations assumed by Licensee hereunder are personal to Licensee and may not be assigned, delegated, or sublicensed, whether by assignment, by contract or by operation of law as part of a corporate reorganization, consolidation, merger, sale of all or substantially all of Licensee's assets without the prior written consent of Licensor. If it is assigned (with written consent) then this Agreement will be binding upon and inure to the benefit of the parties as well as their lawful successors and assigns. Without limiting the generality of the foregoing, for the purposes of this section, "assignment" will include (and the foregoing prohibition will bar) any transfer or issuance of debt or equity securities by Licensee that causes a change in control of Licensee. Any attempt by Licensee to assign, sublicense, mortgage or otherwise encumber this Agreement or any of Licensee's rights, interests or duties hereunder (including without limitation Licensee's inventory of Licensed Products) shall be void *ab initio* and shall constitute a material breach of this Agreement.

(d)     **FORCE MAJEURE:** The parties shall be released from their respective obligations hereunder if government regulations or other causes arising out of a state of war or other national emergency, or other causes beyond the reasonable control of the parties, render performance of such obligations reasonably impracticable. If such event continues for a period of sixty (60) days, either party may terminate this Agreement by giving written notice. Upon such termination, all royalties due on sales theretofore made shall become then immediately due and payable or as soon as practicable if such force majeure event affects banking institutions, and no Advance, Royalties or Guarantee theretofore paid shall be repayable. If neither party elects to terminate this Agreement as immediately hereinabove provided, the Term of this Agreement shall be extended automatically for a period of time equal to the period of such "force majeure" event but not to exceed six months from the date of first occurrence.

(e)     **FURTHER INSTRUMENTS:** Licensee shall furnish Licensor with any further instruments, in such form and substance as Licensor reasonably require to evidence, establish, protect, record, enforce, defend or secure to Licensor any or all of is rights, titles, properties or interests or more fully to effectuate or carry out the purposes, provisions or intent of this Agreement. In the event that Licensee fails to execute and delivers such documents reasonably requested by Licensor or fails to provide a reasonable objection to said request within ten (10) business days from the date of request, Licensee then appoints Licensor as its lawful attorney-in-fact to execute or deliver the instruments solely as contemplated by this paragraph.

(f)     **GOVERNING LAW / RESOLUTION OF DISPUTES:** This Agreement shall be governed by the laws of the State of Nevada applicable to contracts made and to be wholly performed in the State of Nevada (without regard to choice of law). Any claim, dispute or disagreement in respect of this Agreement may be brought only in the courts of the State of Nevada, in Clark County, or the federal courts within the District of Nevada, located in Clark County, which courts shall have exclusive jurisdiction thereof. Any process in any action or proceeding commenced in such courts may, among other methods, be served upon the parties, as applicable, by delivering or mailing the same, via registered or certified mail, return receipt requested, addressed to the parties, as applicable, at its respective addresses set forth on the first page hereof or such other address as the parties, as applicable, may designate pursuant to Section 10 of the Agreement to which this Schedule "A" is attached. Any such service by delivery or mail shall be deemed to have the same force and effect as personal service within the State of Nevada. In the event of litigation or other proceeding between the parties arising out of or relating to this Agreement, the prevailing party will be entitled to recover court costs, fees payable to referees and reasonable fees of attorneys, accountants and expert witnesses incurred by such a party in connection with such action. The term "prevailing party" for purposes of this Agreement shall include a defendant who has by motion, judgment, verdict or dismissal, successfully defended against any claim that has been asserted against it.

(g)     **BANKRUPTCY:** The parties hereby agree and intend that this Agreement is an executory contract governed by Section 365 of the U.S. Bankruptcy Code ("Bankruptcy Code"). In the event of Licensee's bankruptcy, insolvency, receivership or liquidation (for convenience, "Bankruptcy"), the parties intend and agree as follows:

(i)     Any Yearly Guarantee Payments and Royalties payable under this Agreement during the Bankruptcy period shall be deemed administrative claims under the Bankruptcy Code because the parties recognize and agree that the Bankruptcy estate's enjoyment of this Agreement will: (1) provide a material benefit to the Bankruptcy estate during its reorganization; and (2) deny Licensor the benefit of the exploitation of the rights through alternate means during the Bankruptcy reorganization.

(ii)     The parties acknowledge and agree that any delay or uncertain duration of the period during which the trustee, receiver, liquidator or other analogous official of the Bankruptcy estate is deciding to assume or

{00020682.DOC/4 / 08/31/2010 04:18 PM} Zulfa LLC - LIFC Amended and Restated Merchandise License Agreement 10 07 10F.docx
CONFIDENTIAL

19

reject the Agreement as provided in the Bankruptcy Code (the "Decision Period") would materially harm Licensor by interfering with Licensor's ability to alternatively exploit the rights granted under this Agreement. Therefore, the parties agree that the Decision Period will not exceed thirty (30) days.

(iii)    In safeguarding its valuable rights hereunder, including, without limitation, its copyright, trademark and other intellectual property rights in and to the Licensed Property, Licensor has relied on the particular skill and knowledge base of Licensee. Therefore, the parties acknowledge and agree that in a Bankruptcy, this Agreement is a license of the type described by Section 365(c)(1) of the Bankruptcy Code and may not be assigned without the prior written consent of the Licensor.

(h)    **ENTIRE AGREEMENT, ETC.:** This Agreement (including any exhibits and schedules which are attached hereto and made a part hereof by this reference), shall constitute the entire understanding of the parties with respect to the subject matter, superseding all prior and contemporaneous promises, agreements and understandings, whether written or oral, pertaining thereto and cannot be modified except by a written instrument signed by both parties. The Approvals of Sublicense Agreement, dated July 24, 2009 and March 27, 2010, among Yuke's Co., Ltd., Licensor and Licensee shall be attached hereto as Exhibit "A" and made a part hereof. Section headings contained in this Agreement are for convenience only and shall not be given any legal effect. Nothing herein contained shall constitute a partnership between or joint venture by the parties hereto, or constitute either party the agent of the other. This Agreement is not for the benefit of any third party and shall not be deemed to give any right or remedy to any such party, whether referred to herein or not. Nothing herein contained shall be construed to require the commission of any act contrary to law, and wherever there is any conflict between any provision of this Agreement and material statute, law or ordinance, the latter shall prevail, but in such event the provision of this Agreement affected shall be curtailed and limited only to the extent necessary to bring it within the legal requirements. This Agreement shall be binding upon and shall inure to the benefit of the parties hereto and the assigns and successors of Licensor.

**[REST OF PAGE LEFT INTENTIONALLY BLANK]**

{00020682.DOC/4 / 08/31/2010 04:18 PM} Zuffa LLC - UFC Amended and Restated Merchandise License Agreement 10 07 10F.docx
CONFIDENTIAL

20

## SCHEDULE "B"

### Fighters in *UFC: Undisputed 2009*

| Name | Weight Class |
|------|--------------|
| Gabriel Gonzaga | Heavyweight |
| Antonio Rodrigo Nogueira | Heavyweight |
| Tim Sylvia | Heavyweight |
| Brock Lesnar | Heavyweight |
| Cheick Kongo | Heavyweight |
| Frank Mir | Heavyweight |
| Cain Velasquez | Heavyweight |
| Brandon Vera | Heavyweight |
| Eddie Sanchez | Heavyweight |
| Heath Herring | Heavyweight |
| Andrei Arlovski | Heavyweight |
| Mirko Crocop | Heavyweight |
| Fabricio Werdum | Heavyweight |
| Mark Coleman | Heavyweight |
| Antoni Hardonk | Heavyweight |
| Justin McCully | Heavyweight |

| Name | Weight Class |
|------|--------------|
| Chuck Liddell | Light Heavyweight |
| Quinton Rampage Jackson | Light Heavyweight |
| Forrest Griffin | Light Heavyweight |
| Tito Ortiz | Light Heavyweight |
| Houston Alexander | Light Heavyweight |
| Keith Jardine | Light Heavyweight |
| Stephan Bonnar | Light Heavyweight |
| Wanderlei Silva | Light Heavyweight |
| Mauricio "Shogun" Rua | Light Heavyweight |
| Rashad Evans | Light Heavyweight |
| Lyoto Machida | Light Heavyweight |
| James Irvin | Light Heavyweight |
| Wilson Gouveia | Light Heavyweight |
| Kazuhiro Nakamura | Light Heavyweight |
| Jason Lambert | Light Heavyweight |
| Tim Boetsch | Light Heavyweight |

| Name | Weight Class |
|------|--------------|
| Anderson Silva | Middleweight |
| Rich Franklin | Middleweight |
| Dan Henderson | Middleweight |
| Michael Bisping | Middleweight |
| Kendall Grove | Middleweight |
| Chris Leben | Middleweight |
| Jason MacDonald | Middleweight |
| Nate Marquardt | Middleweight |
| Drew McFedries | Middleweight |
| Ricardo Almeida | Middleweight |

{00020682.DOC/4 / 08/31/2010  04:18 PM} Zuffa LLC - UFC Amended and Restated Merchandise License Agreement 10 07  10F.docx
CONFIDENTIAL

21

| | |
|---|---|
| Evan Tanner | Middleweight |
| Yushin Okami | Middleweight |
| Alan Belcher | Middleweight |
| Martin Kampmann | Middleweight |
| Jeremy Horn | Middleweight |
| Dean Lister | Middleweight |

| **Name** | **Weight Class** |
|---|---|
| Karo Parisyan | Welterweight |
| Georges St. Pierre | Welterweight |
| Matt Hughes | Welterweight |
| Josh Koscheck | Welterweight |
| Diego Sanchez | Welterweight |
| Jon Fitch | Welterweight |
| Matt Serra | Welterweight |
| Mike Swick | Welterweight |
| Marcus Davis | Welterweight |
| Thiago Alves | Welterweight |
| Ben Saunders | Welterweight |
| Josh Burkman | Welterweight |
| Chris Lytle | Welterweight |
| Kyle Bradley | Welterweight |
| Matt Arroyo | Welterweight |
| Anthony Johnson | Welterweight |

| **Name** | **Weight Class** |
|---|---|
| Joe Stevenson | Lightweight |
| BJ Penn | Lightweight |
| Kenny Florian | Lightweight |
| Roger Huerta | Lightweight |
| Sean Sherk | Lightweight |
| Thiago Tavares | Lightweight |
| Mac Danzig | Lightweight |
| Spencer Fisher | Lightweight |
| Nathan Diaz | Lightweight |
| Tyson Griffin | Lightweight |
| Gray Maynard | Lightweight |
| Joe Lauzon | Lightweight |
| Hermes Franca | Lightweight |
| Mark Bocek | Lightweight |
| Rich Clementi | Lightweight |
| Clay Guida | Lightweight |

{00020682.DOC/4 / 08/31/2010  04:18 PM}Zuffa LLC - UFC Amended and Restated Merchandise License Agreement 10 07 10F.docx
CONFIDENTIAL

22

## SCHEDULE "B-1"

### Fighters and Employees in *UFC Undisputed 2010*

**Current Fighters**
Alan Belcher
Amir Sadollah
Anderson Silva**
Anthony Johnson
Antoni Hardonk
Antonio Rodrigo Nogueira
BJ Penn
Brandon Vera
Brendan Schaub
Brock Lesnar
Cain Velasquez
Caol Uno
Carlos Condit
Chael Sonnen
Cheick Kongo**
Chris Leben
Chris Lytle
Chuck Liddell**
Clay Guida
Cole Miller
Dan Hardy
Dan Henderson**
Dan Miller
Demian Maia
Denis Kang
Dennis Siver
Diego Sanchez
Dong Hyun Kim
Drew McFredries
Dustin Hazelett
Eddie Sanchez
Efrain Escudero
Fabricio Werdum**
Forrest Griffin
Frank Edgar
Frank Mir
Frank Trigg
Gabriel Gonzaga
Georges St. Pierre**
Gray Maynard
Heath Herring**
Hermes Franca**
James McSweeny
James Wilks
Jason Brilz
Joe Lauzon
Joe Stevenson
Jon Fitch
Jon Jones
Josh Koscheck
Junior dos Santos
Justin McCully
Karo Parisyan

Keith Jardine
Kendall Grove
Kenny Florian
Kimbo Slice
Krzysztof Soszynski**
Kurt Pellegrino
Luiz Cane**
Lyoto Machida
Marcus Davis
Marcus Jones
Mark Coleman**
Martin Kampmann
Matt Hamill
Matt Hughes
Matt Serra
Mauricio "Shogun" Rua
Michael Bisping
Mike Swick
Mirko Cro-Cop
Mostapha Al Turk**
Nate Marquardt
Nate Quarry**
Nathan Diaz**
Pat Barry
Patrick Cote
Paulo Thiago
Quinton Jackson**
Rashad Evans
Ricardo Almeida
Rich Franklin
Ross Pearson
Roy Nelson
Ryan Bader
Sean Sherk
Shane Carwin
Spencer Fisher
Stefan Struve
Stephan Bonnar
Steve Cantwell**
Terry Etim
Thiago Alves
Thiago Silva
Tito Ortiz
Todd Duffee
Tyson Griffin
Vitor Belfort
Wanderlei Silva
Wilson Gouveia
Yoshiro Akiyama
Yushin Okami

**Past Fighters**
Andrei Arlovski**
Dan Severn

Jens Pulver**
Royce Gracie

**Celebrity Fighters**
Shaquille O'Neal*

**Employees***
Dana White
Frank Fertitta
Lorenzo Fertitta
Craig Borsari
Jeff Davidson
Greg Hendricks
Sean Shelby
Joe Silva
Marc Ratner
Kirk Hendrick

*Subject to those certain restrictions provided to Licensee by Licensor

** Non-exclusive license

{00020682.DOC/4 / 08/31/2010  04:18 PM} Zuffa LLC - UFC Amended and Restated Merchandise License Agreement 10 07 10F.docx
CONFIDENTIAL

23





















