Exhibit C

EXECUTION VERSION

## SETTLEMENT, MUTUAL RELEASE, AND LICENSE AGREEMENT

This SETTLEMENT, MUTUAL RELEASE, and LICENSE AGREEMENT (this "**Agreement**"), dated and effective as of June 1, 2012, by and between ZUFFA, LLC ("**Zuffa**"), 2960 West Sahara Avenue, Las Vegas, Nevada 89102, Zuffa Marketing, LLC d/b/a d/b/a "Ultimate Fighting Championship", "PRIDE Fighting Championship" and "PRIDE FC" ("**Zuffa Marketing**"), 2960 West Sahara Avenue, Las Vegas, Nevada 89102 and THQ INC. ("**THQ**"), 29903 Agoura Road, Agoura Hills, California 91301.

### RECITALS

**WHEREAS**, Zuffa owns or controls the rights in and to the Property (as defined below);

**WHEREAS**, THQ and Zuffa Marketing are parties to that certain SPONSORSHIP AGREEMENT dated October 7, 2010, as amended ("Sponsorship Agreement");

**WHEREAS**, Zuffa and THQ are parties to that certain AMENDED AND RESTATED MERCHANDISE LICENSE AGREEMENT dated October 7, 2010, as amended ("MLA");

**WHEREAS**, the MLA grants THQ the right to develop, manufacture, distribute, sell and otherwise exploit Licensed Products (as defined below) embodying the Property;

**WHEREAS**, except to the limited extent provided herein, Zuffa, THQ and Zuffa Marketing, desire to terminate the Sponsorship Agreement and MLA and as provided herein, mutually release each other from any potential claims any party may have against the others; and

**WHEREAS**, Zuffa and THQ, by this Agreement, intend to carry forward certain portions of the MLA until the end of the year.

### AGREEMENT

**NOW, THEREFORE**, in consideration of these premises, and the mutual undertakings, licenses and covenants not to sue granted herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Zufa, Zuffa Marketing and THQ hereby agree as follows:

1.    DEFINITIONS

As used herein:

a.    "**Intellectual Property**" means all intellectual property rights of any nature, including, without limitation:

(i) inventions, discoveries, processes, designs, techniques, developments, technology, and related improvements, whether or not patentable, and all United States or foreign patents, patent applications, divisionals,

continuations, reissues, renewals, registrations, confirmations, re-examinations, certificates of inventorship, extensions, and the like, and any provisional applications of any such patents or patent applications, and any foreign or international equivalent of any of the foregoing;

(ii) any word, name, symbol, color, designation, or device or any combination thereof (to the extent the same may be trademarked under applicable Law), including, without limitation, any United States or pending trademark, trade dress, service mark, service name, trade name, brand name, logo, domain name, or business symbol, and any foreign or international equivalent of any of the foregoing and all goodwill associated therewith;

(iii) any work, whether or not a registered copyright in the United States or elsewhere, that incorporates, is based upon, derived from, or otherwise uses any intellectual property, including, without limitation, mechanical and electronic design drawings (including, without limitation, computer-aided design files), specification, software (including, without limitation, source code and object code), processes, technical or engineering data, test procedures, schematics, writings, materials, products, artwork, packaging and advertising materials, algorithms and flowcharts; and

(iv) technical, scientific, and other know-how and confidential information, trade secrets, knowledge, technology, means, methods, processes, practices, formulas, assembly procedures, computer programs, source code, apparatuses, specifications, books, records, production data, publications, databases, reports, manuals, data and results, in written, electronic, or any other form.

b.  **"Licensed Products"** has the meaning ascribed to it in section 2 of the MLA.

c.  **"Property"** has the meaning ascribed to it in section 1 of the MLA.

d.  **"UFC 1"** means the Licensed Product entitled UFC Undisputed 2009, including without limitation, all source code, object code, and the development environment therefor.

e.  **"UFC 2"** means the Licensed Product entitled UFC Undisputed 2010, including without limitation, all source code, object code, and the development environment therefor.

f.  **"UFC 3"** means the Licensed Product entitled UFC Undisputed 3, including without limitation, all source code, object code, and the development environment therefor.

g.  **"UFC 4"** means the Licensed Product tentatively entitled UFC Undisputed 4, including without limitation, all source code, object code, and the development environment therefor.

h.  **"UFC Mobile"** means the Licensed Product entitled UFC Undisputed for the iOS operating system.

i.    "**UFC Social**" means the Licensed Product entitled UFC Undisputed Fight Nation for social network platforms, including without limitation, all source code, object code, and the development environment therefor.

j.    "**UFC Trainer**" means the Licensed Product entitled UFC Personal Trainer: The Ultimate Fitness System, including without limitation, all source code, object code, and the development environment therefor.

2,    **THQ LICENSE AND ASSIGNMENT**

a.    THQ License: In connection with the Licensed Products, including, without limitation, UFC 1, UFC 2, UFC 3, UFC 4, UFC Trainer, UFC Mobile and UFC Social, effective as of April 1, 2013, THQ hereby grants to Zuffa a non-exclusive, paid-up, royalty-free, sub-licensable, perpetual license to any Intellectual Property owned by THQ necessary to reproduce, use, sell, distribute or license THQ's Intellectual Property as embodied in the Licensed Products.

b.    UFC Social: In connection with UFC Social, the parties agree that THQ shall have the right to wind-down UFC Social in an orderly fashion or if Zuffa desires and notifies THQ in writing of its desire within ten (10) days of the date of this Agreement, THQ shall transfer UFC Social and all obligations related thereto to Zuffa or its designee. In connection therewith, in the event Zuffa elects to have THQ transfer UFC Social, THQ shall assign to Zuffa or its designee, all of THQ's rights and obligations with respect to UFC Social under the Development Agreement between THQ and The Embassy Interactive, Inc. ("**Embassy**") dated as of April 26, 2010, and as subsequently amended (the "**THQ Development Agreement**") pursuant to an Assignment and Assumption Agreement regarding the THQ Development Agreement, substantially in the form as set forth on Exhibit 1 (or such other form as Zuffa (or its designee), THQ and Embassy shall agree), wherein Zuffa (or its designee) shall assume all of THQ's rights and obligations with respect to UFC Social as set forth in the THQ Development Agreement.

c.    Assignments: THQ shall identify to Zuffa, and provide to Zuffa a copy of, all talent agreements, developer agreements or other agreements ("**Third Party Agreements**") related to the Licensed Products (excluding THQ's license agreements with console manufacturers (e.g., Sony, Microsoft and Nintendo)), and THQ shall use its best efforts to assign to Zuffa (or its designee) all of THQ's rights under any Third Party Agreements required for Zuffa (or its designee) to reproduce, use, sell, distribute or license the Licensed Products on and after April 1, 2013; provided that (1) if any Third Party Agreement is non-assignable (excluding THQ's license agreements with console manufacturers (e.g., Sony, Microsoft and Nintendo)), THQ shall use its commercially reasonable efforts to assist Zuffa (or its designee) in obtaining from the applicable third party to such Third Party Agreement any rights necessary to allow the continued exploitation by Zuffa (or its designee) of the Licensed Product to which such Third Party Agreement relates; (2) Zuffa shall

have an opportunity to review any such Third Party Agreement to be assigned to Zuffa (or its designee) prior to assuming any such Third Party Agreement, and, following its review thereof, Zuffa may elect not to assume such Third Party Agreement and (3) if Zuffa elects to have any such Third Party Agreement assigned to Zuffa, Zuffa shall assume THQ's obligations (including, but not limited to, payment of any developer royalties) under any such Third Party Agreement so assigned. In the event Zuffa does not assume any such Third Party Agreement or the Third Party Agreement is non-assignable after THQ's commercially reasonable efforts as set forth in (1) above, THQ shall have no further obligations with respect thereto, and Zuffa shall be responsible for securing any necessary rights to allow continued exploitation of the Licensed Products.

3.   **TERMINATION OF MLA AND SPONSORSHIP AGREEMENT**

    a.   <u>Termination</u>: Except as provided in section 3(b) and section 6(b) below, the parties hereby agree that the Sponsorship Agreement and MLA are hereby terminated and of no further force or effect.

    b.   <u>Survival of certain provisions of the MLA</u>: Notwithstanding section 3(a) above, solely with respect to UFC 1, UFC 2, UFC 3, UFC Trainer, UFC Social and UFC Mobile, Zuffa and THQ hereby agree to be bound by the terms and conditions of the MLA and THQ may continue to exploit UFC 1, UFC 2, UFC 3, UFC Trainer, UFC Social and UFC Mobile until March 31, 2013, at which time the MLA shall automatically and fully terminate and be of no further force or effect. For the avoidance of doubt, all rights, licenses and privileges granted to THQ under the MLA shall automatically revert to Zuffa and THQ shall cease all exploitation of the Licensed Products as of March 31, 2013, and THQ acknowledges and agrees that there shall be no so-called "sell-off period" as provided in Section 11(b) of Schedule "A" to the MLA. For the further avoidance of doubt, THQ shall cease all development activity on UFC 4 immediately on execution of this Agreement. Except as provided in Section 2(c) above, no later than three business days prior to March 31, 2013, THQ shall deliver to Zuffa, or Zuffa's designee, all Licensed Products related to UFC 1, UFC 2, UFC 3, UFC Trainer, UFC Social and UFC Mobile and all materials required to reproduce, use, sell, distribute or license UFC 1, UFC 2, UFC 3, UFC Trainer, UFC Social and UFC Mobile, including without limitation, all gold masters, source code (to the extent in THQ's possession, and which Zuffa acknowledges THQ does not have for UFC 1, UFC 2, and UFC 3), object code, development documentation and the development environment therefor (to the extent in THQ's possession, and which Zuffa acknowledges THQ does not have for UFC 1, UFC 2, and UFC 3), and THQ shall promptly deliver to Zuffa, or Zuffa's designee, at THQ's cost and expense, any Licensed Products returned to, delivered to or received by THQ from time to time after March 31, 2013.

4.   **CASH PAYMENT**

a. <u>Consideration</u>: In consideration for the license, releases and rights granted under this Agreement, within ten (10) days of mutual execution of this Agreement, Zuffa, or its designee, shall reimburse THQ for certain current development expenses incurred by THQ in developing UFC 4, by paying in cash to THQ an amount equal to ten million U.S. Dollars ($10,000,000.00).

5.   **RELEASES**

a. Mutual Releases: With the exception of those obligations expressly set forth in this Agreement, each of THQ, Zuffa Marketing and Zuffa hereby waive, release, remise and forever discharge each other, each of their respective affiliates, and each of their respective agents, directors, members, partners, shareholders, employees, officers, representatives and attorneys, and the successors and assigns of each of them (collectively, "Indemnitees") from any and all rights, claims, demands, and cause or causes of action of any nature whatsoever, whether known or unknown, fixed or contingent, matured or unmatured, or otherwise now existing or hereafter arising, including without limitation the negotiation, execution or enforcement of the MLA and the Sponsorship Agreement and the performance of either party of its obligations under the MLA and the Sponsorship Agreement.

b. <u>Release of California Civil Code Section 1542</u>: For the purpose of the releases set forth above, Zuffa, Zuffa Marketing and THQ, upon such releases becoming effective, shall be deemed to have expressly, knowingly and intentionally waived for themselves and for their respective legal successors and assigns, the benefits and rights of section 1542 of the California Civil Code, which states as follows:

"A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor." Cal. Civ. Code § 1542.

Each of Zuffa, Zuffa Marketing and THQ acknowledge that they have received independent legal advice from their attorneys with respect to waiving the provisions of California Civil Code § 1542 and acknowledge that this waiver is a material inducement to and consideration for each party's execution of the Agreement. Each of Zuffa, Zuffa Marketing and THQ shall likewise be deemed to have waived the benefits of any statute, rule or doctrine, or common law principle of any jurisdiction whatsoever.

6.   **INDEMNIFICATION AND WARRANTY**

a. In addition to the representations and warranties set forth in the MLA and the Sponsorship Agreement, each party represents and warrants that it has not heretofore assigned or transferred, or purported to assign or transfer, to any person or entity not a party hereto any claim, debt, covenant, agreement,

contract, liability, demand, obligation, account, expense, action, cause of action or suit being released hereunder.

b.   Notwithstanding Section 3(a) above, each party's respective indemnification obligations as set forth in the MLA and the Sponsorship Agreement shall survive in accordance with the terms of the MLA and/or Sponsorship Agreement.

c.   THQ hereby represents, warrants and covenants to Zuffa that to the extent that any Licensed Product makes use of any THQ Intellectual Property that THQ has the right and ability to grant the license to Zuffa in accordance with Section 2(a).  Further, THQ represents and warrants that the list of Third Party Agreements to be provided to Zuffa hereunder shall, to the best of THQ's knowledge, be complete and accurate and not contain any material omissions, and in the event THQ discovers any omission it shall promptly provide Zuffa with an updated list and a copy of such omitted Third Party Agreement.

7.     **CONFIDENTIALITY**

The parties shall keep the terms and conditions of this Agreement confidential. Except as provided on Exhibit 2, no public announcements or press releases concerning this Agreement will be made by either party without the prior approval of the other.  Notwithstanding the foregoing, the prior approval of a party hereunder shall not be required where a party is required to issue announcements or make disclosures pursuant to the rules of an applicable stock exchange or pursuant to other legal or regulatory requirements (provided, however, such party shall use reasonable efforts to inform the other party prior to such disclosure), or disclosure of the fact of the existence of this Agreement and disclosure which may be necessary for a party to enforce its rights under this Agreement.  This section does not bar Zuffa from making public announcements that Zuffa has entered into new relationships or publishing agreements concerning the Property.

8.     **MISCELLANEOUS**

a.   Further Assurances: THQ shall furnish Zuffa with any further instruments, in such form and substance as Zuffa may reasonably require to evidence, establish, protect, record, enforce, defend or secure to Zuffa any or all of its rights, titles, property or interests in the Licensed Products or to carry out the purposes, provisions or intent of this Agreement. In the event that THQ shall fail to execute and deliver such documents reasonably requested by Zuffa or fails to provide a reasonable objection to said request within ten business days from the date of request, THQ then appoints Zuffa as its lawful attorney-in-fact solely to execute or deliver such instruments.

b.   Non-Disparagement: Each party agrees that it will not, directly or indirectly, individually or in concert with others, engage in any conduct or make any statement that has, or is likely to have, the effect of undermining or disparaging any other party, or their goodwill, products or business

opportunities, or that is likely to have the effect of undermining or disparaging the reputation of any officer, director, affiliate, member, agent, representative or employee, past or present, of the other party.

c.  Governing Law: This Agreement shall be governed by, construed and enforced in accordance with the substantive and procedural laws of the State of Nevada. Any process in any action or proceeding commenced in such courts may, among other methods, be served upon the parties, as applicable, by delivering or mailing the same, via registered or certified mail, return receipt requested. addressed to the parties, as applicable, at its respective addresses set forth on the first page hereof. Any such service by delivery or mail shall be deemed to have the same force and effect as personal service within the State of Nevada. In the event of litigation or other proceeding between the parties arising out of or relating to this Agreement, the prevailing party will be entitled to recover court costs, fees payable to referees and reasonable fees of attorneys, accountants and expert witnesses incurred by such a party in connection with such action. The term "prevailing party" for purposes of this Agreement shall include a defendant who has by motion, judgment, verdict or dismissal, successfully defended against any claim that has been asserted against it.

d.  Severability: If any provision of this Agreement shall be deemed by a Court of competent jurisdiction and last resort to be invalid, unenforceable, or rescinded as against public policy or for any other reason, such provision shall be deemed stricken from this Agreement. This Agreement shall remain valid and enforceable as to all other provisions.

e.  Notices: All notices, statements and/or payments to be given to the parties hereunder shall be addressed to the parties at the addresses set forth on the first page hereof or at such other address as the parties shall designate in writing from time to time. All notices shall be in writing and shall either be served by personal delivery. mail. or facsimile (If confirmed by mall or personal delivery of the hard copy), all charges prepaid. Except as otherwise provided herein, such notices shall be deemed given when personally delivered, all charges prepaid. or on the date five (5) days following the date of mailing, except that notices of change of address shall be effective only after the actual receipt thereof. Notices addressed to Zuffa or Zuffa Marketing shall be sent to the attention of Mr. Kirk Hendrick, Chief Operating Officer, with a copy sent to Ike Lawrence Epstein. Esq., Executive Vice President and General Counsel. Notices addressed to THQ shall be sent to the attention of Edward Kaufman, Executive Vice President. Business and Legal Affairs, with a copy sent to Brian Farrell, CEO.

f.  No Assignment: This Agreement and the license rights granted to THQ hereunder and the obligations assumed by THQ hereunder are personal to THQ and may not be assigned, delegated, or sublicensed, whether by assignment, by contract or by operation of law as part of a corporate reorganization, consolidation, merger, sale of all or substantially all of licensee's assets without the prior written consent of Zuffa. If it is assigned

(with written consent) then this Agreement will be binding upon and inure to the benefit of the parties as well as their lawful successors and assigns. Without limiting the generality of the foregoing, for the purposes of this section, "assignment" will include (and the foregoing prohibition will bar) any transfer or issuance of debt or equity securities by THQ that causes a change in control of THQ. Any attempt by THQ to assign, sublicense, mortgage or otherwise encumber this Agreement or any of THQ's rights, interests or duties hereunder (including without limitation THQ's inventory of Licensed Products) shall be void *ab initio* and shall constitute a material breach of this Agreement.

g.   <u>Entire Agreement</u>:   This Agreement (including the MLA and Sponsorship Agreement to the extent incorporated by reference herein), shall constitute the entire understanding of the parties with respect to the subject matter, superseding all prior and contemporaneous promises, agreements and understandings, whether written or oral, pertaining thereto and cannot be modified except by a written instrument signed by Zuffa, Zuffa Marketing and THQ.

h.   <u>Bankruptcy</u>:   The parties hereby agree and intend that this Agreement is an executory contract governed by Section 365 of the U.S. Bankruptcy Code ("**Bankruptcy Code**"). In the event of Licensee's bankruptcy, insolvency, receivership or liquidation (for convenience, "**Bankruptcy**"), the parties intend and agree as follows:

(i)         In the event of a Bankruptcy case by or against THQ, the parties agree that unless and until this Agreement has been rejected in accordance with Section 365 of the Bankruptcy Code, any Royalties payable under the MLA pursuant to this Agreement during the Bankruptcy period shall be deemed administrative claims under the Bankruptcy Code because the parties recognize and agree that the Bankruptcy estate's enjoyment of this Agreement and/or the MLA will: (1) provide a material benefit to the Bankruptcy estate during its reorganization; and (2) deny Zuffa the benefit of the exploitation of the rights through alternate means during the Bankruptcy reorganization.

(ii)        The parties acknowledge and agree that any delay or uncertain duration of the period during which the trustee, receiver, liquidator or other analogous official of the Bankruptcy estate is deciding to assume or reject the MLA or this Agreement as provided in the Bankruptcy Code (the "**Decision Period**") would materially harm Zuffa by interfering with Zuffa's ability to alternatively exploit the rights granted under the MLA and this Agreement. Therefore, Zuffa and THQ agree that the Decision Period will not exceed thirty (30) days.

(iii)       In safeguarding its valuable rights hereunder, including, without limitation, its Intellectual Property rights in and to the Licensed

Property, Zuffa has relied on the particular skill and knowledge base of THQ. Therefore, Zuffa and THQ acknowledge and agree that in a Bankruptcy, this Agreement and the MLA is a license of the type described by Section 365(c)(1) of the Bankruptcy Code and may not be assumed or assigned without the prior written consent of Zuffa. Zuffa hereby specifically consents, in satisfaction of Sections 365(c)(1)(B), that THQ as a debtor in possession may assume this Agreement provided that (i) it cures at such time any default hereunder, (ii) it provides reasonable assurance of future performance and (iii) it satisfies all provisions of Section 365 applicable to the assumption of an executory contract.   Zuffa's consent is limited to THQ's assumption of this Agreement and does not apply, and shall not be deemed to apply, to any attempt by THQ to assign this Agreement.   Notwithstanding any assumption of this Agreement by THQ, pursuant to section 8(f) hereof, THQ may not assign this Agreement without the prior written consent of Zuffa.

[Signature Page Follows]

IN WITNESS WHEREOF, the parties hereto have duly executed this Agreement as of the date first above-written:

ZUFFA, LLC
("Zuffa")

By: _____

Name: Dana White

Title: President

ZUFFA MARKETING, LLC
("Zuffa Marketing")

By: _____

Name: Dana White

Title: President

THQ INC.
("THQ")

By: _____

Name: BRIAN J. FARRELL

Title: CEO & CHAIRMAN

[Signature Page to Settlement, Mutual Release, and License Agreement]

EXHIBIT 1

## ASSIGNMENT AND ASSUMPTION AGREEMENT AND CONSENT TO TRANSFER

ASSIGNMENT AND ASSUMPTION AGREEMENT AND CONSENT TO TRANSFER (this "**Assignment**"), is effective as of _____ __, 2012, by and among THQ Inc., a Delaware corporation, with an address of 29903 Agoura Road, Agoura Hills, CA 91301 ("**Assignor**"), The Embassy Interactive Inc., a company incorporated in British Columbia, with offices at 300 – 177 West 7th Avenue, Vancouver, BC, V5Y 1L8, Canada ("**Embassy**"), and [ZUFFA, LLC, 2960 West Sahara Avenue, Las Vegas, Nevada 89102 ("**Assignee**")]. Capitalized terms not otherwise defined herein have the meanings set forth in the Developer Agreement (as defined below).

### RECITALS

WHEREAS, Embassy and Assignor entered into that certain Master Developer Agreement, dated April 26, 2010, (the "**Developer Agreement**") pursuant to which Embassy agreed to develop and operate a social game known as UFC Undisputed Fight Nation (the "**UFC Social Game**") in addition to other games;

WHEREAS, Assignor desires to assign to Assignee all of its rights, obligations and liabilities under the Developer Agreement solely with respect to the UFC Social Game to Assignee, and Assignee desires to assume those rights, obligations and liabilities.

NOW, THEREFORE, in consideration of the mutual covenants and agreements contained herein and for other good and valuable consideration, the receipt and adequacy of which are acknowledged, the parties do hereby agree as follows:

1. Assignment and Assumption. Effective as of the date first written above, Assignor hereby assigns to Assignee all of Assignor's right, title and interest in and to the UFC Social Game and in, to and under the Developer Agreement solely with respect to the UFC Social Game and Assignee hereby assumes the rights, liabilities and obligations of Assignor under the UFC Social Game and the Developer Agreement solely to the extent they relate to the UFC Social Game.

2. Consent to Transfer. Pursuant to the Developer Agreement, Embassy hereby joins in this Assignment to consent to this assignment to Assignee of Assignor's right, title and interest in and to the UFC Social Game and in, to and under the Developer Agreement solely with respect to the UFC Social Game.

3. Governing Law. THIS AGREEMENT, INCLUDING THE INTERPRETATION, CONSTRUCTION, VALIDITY AND ENFORCEABILITY HEREOF, IS GOVERNED BY THE LAWS OF THE STATE OF CALIFORNIA APPLICABLE TO CONTRACTS EXECUTED AND PERFORMED THEREIN, EXCLUDING THAT BODY OF LAW APPLICABLE TO CONFLICTS OF LAW.

4. Successors and Effect of Assignment. This Assignment shall be binding upon, and shall inure to the benefit of, the parties hereto and their respective successors and permitted assigns. The Developer Agreement and all terms and conditions of the Developer Agreement shall remain unchanged and in full force and effect.

5. Counterparts. This Assignment may be executed in one or more counterparts, each of which will be deemed an original, but all of which together will constitute one and the some instrument. A facsimile transmission of this Assignment bearing a signature on behalf of a party will be legal and binding on such party.

IN WITNESS WHEREOF, the parties hereto have executed, or caused their duly authorized representatives to execute, this Assignment as of the date first above written.

[Zuffa, LLC]

_____
Print Name:
Print Title:

THQ Inc.

_____
Print Name:
Print Title:

The Embassy Interactive Inc.

_____
Print Name:
Print Title:

EXHIBIT 2

JOINT STATEMENT

THQ AND ZUFFA ANNOUNCE TRANSFER OF ULTIMATE FIGHTING
CHAMPIONSHIP
VIDEOGAME LICENSE AGREEMENT

**AGOURA HILLS, Calif. & LAS VEGAS, Nev.,** DATE, 2012 – THQ Inc. (NASDAQ: THQI) and Zuffa, LLC, today announced that they have reached an agreement to transfer THQ's exclusive, worldwide license with Zuffa to publish videogames based on the Ultimate Fighting Championship® (UFC®) brand to Electronic Arts Inc. (NASDAQ: EA), effective DATE, 2012, in exchange for an undisclosed cash payment to THQ.

"Over the last three years, THQ has delivered best-in-class, all-encompassing experiences to MMA fans, sports enthusiasts and fighting gamers around the globe with its *UFC Undisputed*™ series.  We want to thank them for their stewardship of our brand," said Dana White, President of Zuffa.  "We look forward to joining forces with EA to leverage their sports platform, and expand our brand in the video game space."

"We've relished our relationship with UFC over the last several years and believe that the UFC gaming brand is in great shape. THQ's more focused strategy moving forward meant that transferring the license to EA made sense to all parties" said Brian Farrell, Chairman and CEO of THQ.  "We'd like to thank the UFC for their great support and partnership and wish EA all the best moving forward".