Exhibit D

STRICTLY CONFIDENTIAL
ATTORNEY/CLIENT PRIVILEGED

December 11, 2011


Electronic Arts Inc.
209 Redwood Shores Parkway
Redwood City, California 94065

Ladies and Gentlemen:

You have requested information concerning THQ Inc. and/or its subsidiaries, affiliates or divisions (collectively, the "Company") in connection with your consideration of a possible negotiated transaction (the "Transaction") with the Company, and you may provide information to the Company at its request in connection with the Transaction. Both parties acknowledge that information disclosed by one party (the "Disclosing Party") to the other party (the "Receiving Party") in connection with the Transaction is proprietary to such Disclosing Party and may include trade secrets or other business information the disclosure of which could harm such Disclosing Party. In consideration for, and as a condition of, such information being furnished to a Receiving Party and its respective directors, officers, employees, agents, advisors, representatives, investment and commercial bankers and affiliates (including, without limitation, attorneys, accountants, consultants and any representatives of such advisors) (collectively, "Representatives"), each party, as a Receiving Party, agrees to treat any and all information concerning the Disclosing Party obtained by such Receiving Party or its Representatives in connection with the Transaction (regardless of whether obtained before, on or after the date of this letter agreement (the "Agreement") and regardless of the manner or form in which it is obtained, including without limitation all written, oral and electronic communications), together with any notes, analyses, compilations, studies, interpretations, documents or records containing, referring, relating to, based upon or derived from such information, in whole or in part (collectively, the "Evaluation Material"), in accordance with the provisions of this Agreement, and to take or abstain from taking the other actions hereinafter set forth. Without limiting the generality of the foregoing, you agree that, without the prior consent of the Company, neither you nor your Representatives will engage in discussions or exchange information regarding a possible transaction with the Company with any other party, including any possible co-bidders or sources of equity financing.

The term "Evaluation Material" does not include information that the Receiving Party can show (a) is or becomes generally available to the public other than as a result of a direct or indirect disclosure by the Receiving Party or its Representatives, (b) was within the Receiving Party's possession on a non-confidential basis prior to its being furnished to the Receiving Party by or on behalf of the Disclosing Party, (c) is received from a source other than the Disclosing Party or any of its Representatives, (d) has been independently developed by the Receiving Party without reference to any Evaluation Material or (e) has been approved for release by written authorization of the Disclosing Party; provided, that in the case of (b) and (c) above, the source of such information was not bound by a

confidentiality agreement with or other contractual, legal or fiduciary obligation of confidentiality to the Disclosing Party or to any other party with respect to such information.

Each party, as a Receiving Party, hereby agrees that it and its Representatives will (a) use the Evaluation Material solely for the purpose of evaluating the Transaction and not for any other purpose, (b) keep the Evaluation Material confidential and (c) not disclose any of the Evaluation Material in any manner whatsoever without the prior written consent of the Disclosing Party; provided, however, that the Receiving Party may disclose any of such information to its Representatives (i) who need to know such information for the sole purpose of evaluating the Transaction, (ii) who are informed by the Receiving Party of the confidential nature of such information and (iii) who are provided with a copy of this Agreement and agree to act in accordance with its terms to the same extent as if they were parties hereto. Each party, as a Receiving Party will be responsible for any breach of this Agreement by any of its Representatives and agrees to take all reasonable measures (including, but not limited to, court proceedings) to restrain its Representatives from disclosure or improper use of the Evaluation Material. It is understood and agreed that a Disclosing Party may, in its sole discretion, from time to time determine that disclosure of certain of its Evaluation Material or of its interest, or the Receiving Party's interest, in evaluating a Transaction to certain of its Representatives may be inappropriate, in which event at the Disclosing Party's request the Receiving Party shall refrain from disclosing such information to such Representatives.

Each party and its Representatives agrees that the identity of the other party and the involvement of such other party in the Transaction shall be treated as Evaluation Material in accordance with the provisions of this Agreement and each party and its Representatives, as a Receiving Party, further agree (except as provided below) that, without the prior written consent of the Disclosing Party, such Receiving Party or its Representatives will not disclose to any person that the Disclosing Party's Evaluation Material exists or has been made available to such Receiving Party or its Representatives. You and your Representatives agree (except as provided below) that, without the prior written consent of the Company, you and your Representatives will not disclose that discussions or negotiations are taking place concerning the Transaction or any other transaction involving the Company or any of the terms, conditions or other facts with respect thereto (including the status thereof), nor will you have any communications whatsoever with any other person, including, without limitation, another person who may be interested in a possible transaction with the Company, concerning the Transaction. Notwithstanding the foregoing, each party may make a disclosure prohibited by the first and second sentences of this paragraph if such disclosure must be made in order for such party not to commit a violation of law, regulation or legal process, and such party has consulted with the other party prior to making any such disclosure. The term "person" as used in this Agreement shall be broadly interpreted to include the media and any corporation, partnership, group, individual or other entity.

Neither you nor your Representatives will initiate or maintain contact with the Company or its Representatives regarding the business, operations, prospects or finances of the Company in connection with your evaluation of the Transaction, except with the

Case 1:13-cv-01651-LPS   Document 32-4   Filed 02/27/14   Page 4 of 9 PageID #: 365

express permission of the Company. The Company will arrange for appropriate contacts for due diligence purposes. You will submit all (a) communications regarding a possible transaction; (b) requests for additional information; (c) requests for facility tours or management meetings; and (d) questions regarding procedures only to persons specifically designated by the Company for that purpose.

In the event that a Receiving Party or any of its Representatives are required by applicable law, regulation or legal process to disclose any of the Evaluation Material it has received, such Receiving Party will promptly notify the Disclosing Party in writing by facsimile and certified mail so that the Disclosing Party may seek a protective order or other appropriate remedy. Nothing herein shall be deemed to prevent a Receiving Party or its Representatives, as the case may be, from honoring a subpoena that seeks discovery of the Evaluation Material if (a) a motion for a protective order, motion to quash and/or other motion filed to prevent the production or disclosure of the Evaluation Material has been denied; provided, however, that such Receiving Party discloses only that portion of the Evaluation Material which its legal counsel advises is legally required and that such Receiving Party exercises all reasonable efforts to preserve the confidentiality of the remainder of the Evaluation Material or (b) the Disclosing Party consents in writing to having the Evaluation Material produced or disclosed pursuant to the subpoena. In no event will a Receiving Party, or any of its Representatives, oppose action by the Disclosing Party to obtain a protective order or other relief to prevent the disclosure of the Evaluation Material or to obtain reliable assurance that confidential treatment will be afforded the Evaluation Material.

If you determine not to proceed with the Transaction, you will promptly notify Edward L. Kaufman of that decision by e-mail at Ed.Kaufman@thq.com, promptly followed by a written confirmation sent to THQ Inc., 29903 Agoura Road, Agoura Hills, CA 91301, Attention: Edward Kaufman, or facsimile: (818) 871-7593. In that case, or at any time upon the request of a Disclosing Party for any reason, the Receiving Party will either (a) promptly destroy all copies of the Evaluation Material in its or its Representatives' possession or (b) promptly deliver to the Disclosing Party at its expense all remaining copies of the Evaluation Material in its and its Representatives' possession, provided, however, that such Receiving Party may retain one copy of the Evaluation Material in its legal department subject to the terms of this Agreement. In addition, such Receiving Party agrees to promptly certify to the Disclosing Party that it has complied with its obligations under this paragraph. Notwithstanding the return or destruction of the Evaluation Material, each party and its Representatives will continue to be bound by your obligations hereunder.

Each party understands and acknowledges that neither party nor any of their respective Representatives makes any representation or warranty, express or implied, as to the accuracy or completeness of any of its respective Evaluation Material. Each party, as a Receiving Party, agrees that neither the Disclosing Party nor any of its Representatives shall have any liability to such Receiving Party or to any of its Representatives relating to or resulting from the use of the Evaluation Material or any errors therein or omissions therefrom. Only those representations or warranties that are made in a Definitive Agreement (as defined in the next sentence) regarding the Transaction, when, as and if

2

executed, and subject to such limitations and restrictions as may be specified therein, will have any legal effect. The term "Definitive Agreement" means a written contract executed by all parties thereto for the Transaction, which contract binds the parties thereto to close such Transaction, subject only to such conditions to closing as may be negotiated between the parties thereto, and does not include an executed letter of intent or any other preliminary written agreement, nor does it include any written or verbal acceptance of an offer or bid.

Each party understands and agrees that no contract or agreement providing for any transaction between them shall be deemed to exist between them unless and until a Definitive Agreement has been executed and delivered, and each party hereby waives, in advance, any claims (including, without limitation, breach of contract and tortious interference claims) in connection with the Transaction unless and until the parties shall have entered into a Definitive Agreement. Each party also agrees that unless and until a Definitive Agreement regarding a Transaction between them has been executed and delivered, neither party will be under any legal obligation of any kind whatsoever with respect to such a Transaction by virtue of this Agreement except for the matters specifically agreed to herein. Subject to any written agreement by and between the parties to the contrary, you further acknowledge and agree that (a) the Company and its Representatives will be free to conduct the process, if any, for the Transaction as it in its sole discretion determines (including, without limitation, negotiating with any prospective buyer(s) and entering into a Definitive Agreement without prior notice to you) and (b) any procedures relating to entering into such Transaction may be changed at any time without notice to you.

The Company reserves the right at any time, in its sole discretion, for any reason or no reason, to reject any and all proposals made by you or any of your Representatives with regard to a Transaction, terminate discussions and negotiations with you, and refuse to provide any further access to the Evaluation Materials. All Evaluation Material shall remain the property of the respective Disclosing Party. With respect to any Evaluation Material provided by a Disclosing Party, no rights to use, license or otherwise exploit such Evaluation Material are granted to the Receiving Party or any of its Representatives, by implication or otherwise, except for the right to consider such Evaluation Material for the limited purposes explicitly provided by this Agreement. In no event shall a Receiving Party or its Representatives, by virtue of the Disclosing Party's disclosure of and/or such Receiving Party's use of any Evaluation Material, acquire any rights with respect thereto, all of which rights shall remain exclusively with the Disclosing Party. Each party acknowledges that the Evaluation Material may be substantially similar or closely related to work independently developed by or for the other party. Each party, as a Receiving Party, will be free to independently use, create, develop, commercialize or market technologies, ideas or products similar to, or contain significant elements encompassed in the concept of the Disclosing Party's Evaluation Material without any obligation or liability to the Disclosing Party so long as such use, development or marketing does not infringe on the trade secret, copyright, trademark, patent rights or other intellectual property rights of the Disclosing Party and does not otherwise violate the provisions of this Agreement. All Evaluation Material and any and all intellectual property rights therein or

derivative works thereof, by whomever made, remain the sole and exclusive property of the respective Disclosing Party.

For a period of one year after the date of this Agreement, unless you shall have been specifically invited in writing by the Company, neither you nor any of your Representatives will in any manner, directly or indirectly, (a) effect or seek, offer or propose (whether publicly or otherwise) to effect, or announce any intention to effect or cause or participate in or in any way assist or encourage any other person to effect or seek, offer or propose (whether publicly or otherwise) to effect or participate in, (i) any acquisition of any securities (or beneficial ownership thereof) or assets of the Company or any of its affiliates, including rights or options to acquire such ownership; (ii) any tender or exchange offer, merger or other business combination involving the Company or any of its affiliates; or (iii) any "solicitation" of "proxies" (as such terms are defined in Rule 14a-1 of Regulation 14A under the Securities Exchange Act of 1934, as amended (the "Exchange Act"), disregarding clause (iv) of Rule 14a-1(l)(2) and including any otherwise exempt solicitation pursuant to Rule 14a-2(b)) or consents to vote any voting securities of the Company or any of its affiliates; (b) form, join or in any way participate in a "group" (as defined in Section 13(d)(3) of the Exchange Act and the rules and regulations thereunder) with respect to any voting securities of the Company or any of its affiliates or otherwise act in concert with any person in respect of any such securities; (c) otherwise act, alone or in concert with others, to seek to control, control, advise, change or influence the management, Board of Directors, governing instruments, shareholders, policies or affairs of the Company or any of its affiliates; (d) enter into any discussions or arrangements with any third party with respect to any of the foregoing; or (e) make any public disclosure, or take any action that might force the Company, any of its affiliates or any other person to make any public disclosure, with respect to the matters set forth in this Agreement, provided, that clauses (a), (b) or (c) above shall not prevent you from confidentially contacting the Company's Chief Executive Officer or other officers designated by the Company with a proposal to acquire, or to enter into negotiations to acquire, any business or assets of the Company in a friendly, privately negotiated transaction so long as such contact would not require a public announcement by the Company. You also agree during such period not to request the Company (or any of its Representatives), directly or indirectly, to amend or waive any provision of this paragraph (including this sentence). Notwithstanding the other provisions of this paragraph, this paragraph shall immediately terminate and be of no further force and effect in the event that, in the absence of any breach by you, the Company either (x) enters into a binding definitive agreement with a person, entity or group unaffiliated with the Company (a "Third Party") regarding, or becomes subject to, (i) a merger, sale or other business combination transaction involving the Company whereby the Company would not be the surviving entity or where a Third Party (or such Third Party's stockholders) would be acquiring fifty percent or more of the common equity of the Company (or the entity resulting from the transaction) or the assets of the Company or (ii) an acquisition by a Third Party of "beneficial ownership" (as such term is defined under the Securities Exchange Act of 1934, as amended) of fifty percent or more of the common equity of the Company; or (y) makes a general assignment for the benefit of creditors, files a voluntary petition of bankruptcy, suffers or permits the appointment of a receiver for its business or assets, becomes subject to any proceeding

under any bankruptcy or insolvency law, whether domestic or foreign, or adopts a plan of liquidation, restructuring or dissolution, voluntarily or otherwise.

To the extent that any Evaluation Material may include materials or information subject to the attorney-client privilege, work product doctrine or any other applicable privilege concerning pending or threatened legal proceedings or governmental investigations, each party understands and agrees that the parties have a commonality of interest with respect to such matters and it is the desire, intention and mutual understanding of the parties that the sharing of such materials is not intended to, and shall not, waive or diminish in any way the confidentiality of such material or its continued protection under the attorney-client privilege, work product doctrine or other applicable privilege. All Evaluation Material provided by either party that is entitled to protection under the attorney-client privilege, work product doctrine or other applicable privilege shall remain entitled to such protection under these privileges, this Agreement, and under the joint defense doctrine. No provision in this Agreement can be waived or amended except by the written consent of both parties. Any attempted waiver or modification in violation of this provision shall be void.

It is understood and agreed that no failure or delay by any party in exercising any of its right, power or privilege hereunder shall operate as a waiver thereof, nor shall any single or partial exercise thereof preclude any other or future exercise thereof or the exercise of any other right, power or privilege hereunder.

Each party acknowledges that money damages would not be a sufficient remedy for any breach of this Agreement by either party or any of such party's Representatives and that each party is entitled to seek equitable or injunctive relief to prevent any unauthorized use or disclosure of its Evaluation Materials in breach of this Agreement. Such remedies shall not be deemed to be the exclusive remedies for a breach by any party of this Agreement but shall be in addition to all other remedies available at law or equity to the non-breaching party. In the event of litigation relating to this Agreement, if a court of competent jurisdiction determines in a final non-appealable order that a party or any of its Representatives have breached this Agreement, then such breaching party will reimburse the other party for its reasonable legal fees and expenses incurred in connection with enforcing its rights hereunder, including any appeal therefrom.

This Agreement and all disputes or controversies arising out of or related to this Agreement shall be governed by and construed in accordance with the internal laws of the State of Delaware, without reference to its conflicts of law principles.

Each party irrevocably agrees that any legal action or proceeding arising out of or relating to this Agreement brought by the other party or its successors or assigns shall be brought and determined in the Delaware Court of Chancery (or, if such court lacks subject matter jurisdiction, in any appropriate Delaware State or federal court), and each party hereby irrevocably submits to the exclusive jurisdiction of the aforesaid courts for itself and with respect to its property, generally and unconditionally, with regard to any such action or proceeding arising out of or relating to this Agreement and the transactions contemplated hereby. Each party agrees not to commence any action, suit or proceeding

6

relating thereto except in the courts described above in Delaware, other than actions in any court of competent jurisdiction to enforce any judgment, decree or award rendered by any such court in Delaware as described herein. Each party further agrees that service of any process, summons, notice or document by U.S. registered mail to the respective addresses set forth herein shall be effective service of process for any action, suit or proceeding brought against either party in any such court and the parties further waive any argument that such service is insufficient. Each party hereby irrevocably and unconditionally waives, and agrees not to assert, by way of motion or as a defense, counterclaim or otherwise, in any action or proceeding arising out of or relating to this Agreement or the transactions contemplated hereby, (a) any claim that it is not personally subject to the jurisdiction of the courts in Delaware as described herein for any reason, (b) that it or its property is exempt or immune from jurisdiction of any such court or from any legal process commenced in such courts (whether through service of notice, attachment prior to judgment, attachment in aid of execution of judgment, execution of judgment or otherwise) and (c) that (i) the suit, action or proceeding in any such court is brought in an inconvenient forum, (ii) the venue of such suit, action or proceeding is improper or (iii) this Agreement, or the subject matter hereof, may not be enforced in or by such courts.

The provisions of this Agreement shall be severable in the event that any of the provisions hereof are held by a court of competent jurisdiction to be invalid, void or otherwise unenforceable, and the remaining provisions shall remain enforceable to the fullest extent permitted by law.

This Agreement shall terminate upon the earlier to occur of (i) the closing of the Transaction contemplated by this Agreement, and (ii) the second anniversary of the date hereof, unless mutually extended by the parties in writing.

This Agreement may be executed in any number of counterparts and each of such counterparts shall for all purposes be deemed original, and all such counterparts shall together constitute one and the same instrument.

This Agreement and the rights and obligations herein may not be assigned or otherwise transferred, in whole or in part, by either party without the express written consent of the other party, which consent shall not be unreasonably withheld.

[The remainder of this page is intentionally left blank.]

Please confirm your agreement with the foregoing by signing and returning one copy of this Agreement to the undersigned, whereupon this Agreement shall become a binding agreement between you and the Company.

Very truly yours,

THQ Inc.

By: _____

Name: BRIAN FARRELL
Title: CEO

Accepted and agreed as of the date
first written above:

Electronic Arts Inc.

By: _____

Name: Charles E. P. Wood Jr.
Title: Director - Corporate Development